**The STATE of Ohio, Appellee,**

**v.**

**BLACK, Appellant.** ▮

[Cite as *State v. Black* (1993), 85 Ohio App.3d 771.]

Court of Appeals of Ohio,
Hamilton County.

Nos. C–920341 to C–920343.

Decided April 14, 1993.

772

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Stephen J. Wenke,* Assistant Prosecuting Attorney, for appellee.

*Cathy R. Cook,* for appellant.

*Per Curiam.*

In April 1990, defendant-appellant Donald Black was convicted on four charges of contributing to the unruliness of a child as prohibited by R.C. 2919.24. On appeal to this court, we reversed the trial court's judgment on three of the charges against Black and remanded those charges for further proceedings, and discharged Black on the fourth charge. *State v. Black* (1991), 78 Ohio App.3d 130, 604 N.E.2d 171.

Following a jury trial in March 1992, Black was again convicted on the remaining three charges of contributing to the unruliness of a child. He then filed this appeal.

On appeal, Black raises eleven assignments of error. We find merit in some of these assignments of error and, therefore, we reverse the judgment of the trial court and remand the cause for further proceedings.

In the spring of 1989, Black was employed as a teacher at the Millcreek Psychiatric Center for Children, a special-education facility for emotionally disturbed children. At that time, Lesley Brock was a thirteen-year-old patient at the facility and a student in Black's classroom.

After three weeks in Black's classroom, Brock was transferred to the United Methodist Children's Home in Columbus, Ohio. She told personnel there that Black had acted inappropriately toward her on several occasions and she gave them letters written to her by Black. Following an administrative hearing in October 1989, Black was terminated from his employment at the Millcreek Psychiatric Center for Children. Criminal charges were then filed against Black.

In the first trial, Brock testified that Black had made sexual advances toward her on days when he had kept her after class on the pretext of making up homework or taking a test. According to Brock, Black initially talked about being friends but then he told her that he loved her. She testified that Black first kissed her and then he began to give her letters, cards, pictures of himself and gifts. Then one day after class, Black laid Brock on his desk, pulled his pants down and climbed on top of her. Black placed his hand in Brock's shirt

and felt her breasts, and then placed his hand in Brock's pants and inserted his finger into her vagina. On another occasion, Black requested oral sex from Brock, but she declined.

At the second trial, Brock was unavailable to testify in court. The trial court permitted the prosecution to read her testimony from the first trial into the record during the second trial.

Black did not testify in the second trial. However, in a signed statement to Corporal Van Spencer, a police officer at Millcreek Psychiatric Center for Children, Black admitted that Brock was his student, that he had kept her after class on different occasions to complete school work, and that he had given her pictures of himself and a stuffed teddy bear as a going-away present on the day she was discharged.

Black's first, third, fourth and fifth assignments of error state as follows:

"1. The trial court erred to the prejudice of Defendant–Appellant by finding the prosecuting witness unavailable and permitting the transcript of her testimony from the previous trial to be read into evidence."

"3. The trial court erred to the prejudice of Defendant–Appellant by overruling counsel's motion to use portions of the prosecuting witness' [*sic*] medical charts in evidence.

"4. The trial court erred to the prejudice of Defendant–Appellant by refusing to permit Defendant–Appellant to examine the medical and psychiatric records of the prosecuting witness.

"5. The trial court erred to the prejudice of Defendant–Appellant by overruling Defendant–Appellant's motion to strike the cross-examination of the absent witness from the transcript testimony introduce [*sic*] by the state."

Because these assignments of error address the admissibility of Brock's former testimony, we will discuss them together.

■ The Confrontation Clause of the Sixth Amendment and the hearsay rule of evidence restrict the use of statements of a person not present at trial. The Confrontation Clause of the Sixth Amendment, made applicable to the states by virtue of the Fourteenth Amendment, provides that an accused in a criminal prosecution shall have the right to be confronted with the witnesses against him. Evid.R. 802 provides that hearsay is generally not admissible. However, Evid.R. 804 provides for certain hearsay exceptions when the declarant is unavailable to testify. Under Evid.R. 804(B)(1), the use of former testimony is permitted if the declarant is unavailable. To use the former testimony of an unavailable witness, the party wishing to introduce the testimony must show that the declarant is

unavailable to testify and that the former testimony bears sufficient indicia of reliability. *State v. Keairns* (1984), 9 Ohio St.3d 228, 9 OBR 569, 460 N.E.2d 245.

■ "Unavailability" is defined as including situations in which the declarant "is absent from the hearing and the proponent of his statement has been unable to procure his attendance * * * by process or other reasonable means." Evid.R. 804(A)(5). Under Evid.R. 804 and the Confrontation Clause, the proponent of the former-testimony evidence must show the unavailability of the witness despite reasonable, good-faith efforts to secure the witness's attendance. *State v. Keairns, supra.* In this case, the prosecution, as proponent of Brock's former testimony, had the burden of establishing that such efforts had been made. See *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597.

■ The prosecution presented four witnesses to testify with respect to their efforts to locate Brock. These witnesses included a supervisor in the Children's Division of the Hamilton County Department of Human Services, a supervisor in the special-placement unit of the Montgomery County Children's Services, a case worker at Montgomery County Children's Services, and Brock's mother. Their testimony indicated that Brock had been discharged from the United Methodist Children's Home in 1990 and had been returned to the custody of the Montgomery County Children's Board. The Montgomery County Children's Board returned custody of Brock to her mother in January 1992, after she had been missing for a period of six months. Brock's mother testified that she had not seen her daughter since 1991 and that she had no idea where Brock was currently staying. Brock's dental records had been given to the police and a warrant had been issued for her arrest, but the police had been unable to locate her.

Black argues that the prosecution could have contacted more people in its quest to locate Brock and that it could have followed up on certain information indicating that Brock had been seen in a crack house in Dayton. Black also argues that the prosecution should have attempted to locate Brock earlier than one week prior to the start of the second trial.

We decline to adopt a bright-line rule establishing a time limit for efforts to be made to produce a witness. The unavailability of a witness must be determined by consideration of the pertinent facts on a case-by-case basis. The record reveals that Brock had a history of running away from her mother's home and from juvenile facilities; and that Brock had not been seen by her mother or juvenile authorities for a period of several months. In light of Brock's history and the efforts made by the prosecution to find her, we hold that the trial judge had sufficient evidence to find that Brock was unavailable within the meaning of

Evid.R. 804(A). Accordingly, the argument in Black's first assignment of error that the trial court erred in declaring Brock unavailable is not well taken.

The balance of Black's first assignment of error contends that the trial court erred in holding that Brock's former testimony could be admitted into evidence. To admit this testimony, there must have been both an opportunity for cross-examination and adequate indicia of reliability. *State v. Jester* (1987), 32 Ohio St.3d 147, 512 N.E.2d 962. Where the evidence falls within a firmly rooted hearsay exception, reliability can be inferred without a showing of particularized guarantees of trustworthiness. *Ohio v. Roberts, supra.* The use of prior trial testimony is one such firmly rooted hearsay exception. *State v. Keairns, supra.* However, we must determine whether Black had an adequate opportunity to cross-examine Brock in the first trial.

Evid.R. 804(B)(1) provides that the former testimony of an unavailable witness is not excluded by the hearsay rule "if the party against whom the testimony is now offered * * * had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Brock testified in the first trial against Black and Black had an opportunity to cross-examine the witness at length. However, the trial court denied Black's request to review Brock's medical and psychiatric records from Millcreek Psychiatric Center for Children. On appeal to this court, we held that the trial court erred in denying Black access to these records without conducting an *in camera* inspection of them to determine if anything contained therein would have been useful to Black in his defense. *State v. Black, supra.*

In his second trial, Black was permitted to review Brock's educational records and portions of her medical charts, but was denied access to the rest of her medical and psychiatric records. The trial court in the second trial conducted an *in camera* inspection of these records and determined that nothing in them was relevant to Black's defense. The trial court also ruled that evidence submitted by Black as relevant to his defense, as contained in the records he was permitted to review, was irrelevant and not admissible.

Initially, we note that an *in camera* inspection may be conducted by the court without the assistance of trial counsel. *Pennsylvania v. Ritchie* (1987), 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40; *State v. Hand* (May 27, 1988), Montgomery App. No. 10536, unreported, 1988 WL 55466. Therefore, the trial court did not err in refusing defense counsel access to certain medical and psychiatric records and in conducting an *in camera* inspection of these records without the assistance of defense counsel. Accordingly, the fourth assignment of error is overruled.

The trial court found that nothing in Brock's records from the Millcreek Psychiatric Center for Children was relevant to Black's defense and that

nothing in those records could be admitted into evidence. Our review of these records has revealed several notations regarding Brock's history of reporting incidents of sexual abuse which had been "unsubstantiated." Some of these notations indicate that Brock had made sexual-abuse allegations against teachers prior to her admittance to the Millcreek Psychiatric Center for Children which had been "unsubstantiated." We hold that this evidence is clearly relevant to Black's defense against Brock's allegations of sexual abuse. Furthermore, this evidence is not barred by the rape-shield doctrine, which prohibits a defendant from cross-examining an alleged rape victim about her sexual activity. R.C. 2907.02(D). The charges against the defendant consist of three counts of contributing to the unruliness of a minor with no accompanying charge of rape. Therefore, the rape-shield doctrine does not apply. R.C. 2907.02(D). In addition, because prior false accusations of rape do not constitute sexual activity of the victim, the rape-shield doctrine does not exclude such evidence. *State v. Boggs* (1992), 63 Ohio St.3d 418, 588 N.E.2d 813. Accordingly, the trial court erred in excluding evidence of Brock's prior unsubstantiated sexual-abuse accusations on the theory that such evidence was barred by the rape-shield doctrine, and in excluding such evidence on the theory that it was irrelevant to Black's defense.

However, this evidence of prior unsubstantiated sexual-abuse allegations may only be inquired into by the intrinsic means of cross-examination of Brock, and no extrinsic evidence of these prior allegations would be permitted. See *State v. Boggs, supra.* Prior unsubstantiated allegations of sexual abuse may affect the credibility of Brock's testimony, but they do not tend to prove or disprove any of the elements of the current charge of contributing to the unruliness of a child by engaging in sexual contact with that child. See *State v. Boggs, supra.* Therefore, they are an entirely collateral matter which may not be proved by extrinsic evidence under Evid.R. 608(B). See *State v. Kamel* (1984), 12 Ohio St.3d 306, 12 OBR 378, 466 N.E.2d 860, paragraph two of the syllabus.

At his first trial, Black was not privy to the information of Brock's prior false accusations of sexual abuse as contained in her medical and psychiatric records maintained at the Millcreek Psychiatric Center for Children. Therefore, Black did not have an opportunity to cross-examine Brock about her prior accusations. However, we now hold that Black should have been permitted to inquire on cross-examination of Brock about these prior false accusations.

Since Black did not have an opportunity or a similar motive to develop Brock's testimony by cross-examination pursuant to Evid.R. 804(B)(1), and since extrinsic evidence of Brock's prior false accusations of sexual abuse would not be permitted pursuant to Evid.R. 608(B), the trial court erred in admitting Brock's prior trial

testimony into evidence. Accordingly, Black's third assignment of error and the second part of his first assignment of error are well taken.

Although none of Brock's prior testimony should have been admitted into evidence, we note that once a portion of prior testimony is properly admitted, the entire transcript of prior testimony may be used by any party pursuant to Crim.R. 15(F). Therefore, the trial court did not err in overruling Black's motion to strike the cross-examination of Brock's prior trial testimony. Black's fifth assignment of error is, accordingly, overruled.

Black's second assignment of error, alleging that the trial court erred in stating its opinion on the credibility of the prosecuting witness, is not well taken. Comments by the trial court in the presence of the jury which may enhance the credibility of a witness may justify a reversal of the judgment of conviction. *State v. Thomas* (1973), 36 Ohio St.2d 68, 65 O.O.2d 216, 303 N.E.2d 882. However, the trial court's statement prior to the reading of Brock's testimony from the first trial that the witness had been sworn, examined and cross-examined in a prior trial and that, therefore, her testimony had the "indicia, reliability, of truthfulness" was not such a statement regarding the witness's credibility. Instead, the trial court was explaining to the jury that Brock's testimony had been given at a prior trial similar to the current trial and should, therefore, have been afforded the same weight as the testimony of live witnesses.

In his sixth assignment of error, Black contends that the trial court improperly refused to read into the record certain questions asked by the jury during deliberations and by refusing to inform trial counsel what those questions were. During their deliberations, the jury presented to the court several questions concerning the trial. The last set of questions submitted to the court by the jurors was answered by the trial court without reading the questions into the record. Trial counsel was, therefore, precluded from voicing an objection to the answers provided by the trial court. We hold that the trial court erred in failing to read into the record the questions submitted to it by the jurors during their deliberations. Black's sixth assignment of error is well taken.

In his seventh assignment of error, Black contends that the trial court improperly reinstructed the jury in response to a question submitted to the court by the jurors. The jury submitted the following question to the trial court: "Is the complaint of alleged sexual contact necessary to the charge of tending to cause the unruliness of Leslie [*sic* ] Brock?" In response, the trial court stated, "If the acts or conduct of the defendant were of such nature and character as to be reasonably certain to lead the child into the status of becoming an unruly child, then such acts may be considered as tending to cause the unruliness, whether the child actually became an unruly child or not." The answer provided by the trial court was simply not responsive to the question of the jury. See

*State v. Bruner* (Jan. 7, 1987), Hamilton App. No. C–860075, unreported, 1987 WL 5254. This assignment of error is, therefore, well taken.

In his eighth assignment of error, Black maintains that the trial court erred in denying his motion for acquittal and in denying his motion for a new trial. The trial court properly denied Black's motion for acquittal pursuant to Crim.R. 29 because the evidence was such that reasonable minds could reach different conclusions as to whether each material element of the crime of contributing to the unruliness of a child had been proven beyond a reasonable doubt. See *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. However, because of the errors committed during trial as previously discussed, the trial court erred in denying Black's motion for a new trial. Accordingly, Black's eighth assignment of error is overruled in part and sustained in part.

Black's ninth assignment of error asserts that the trial court improperly reread the testimony of Brock to the jury upon the jurors' request after they had begun their deliberations. All or part of the testimony of any witness may be read back to the jury upon its request after the jurors retire to deliberate. *State v. Berry* (1971), 25 Ohio St.2d 255, 54 O.O.2d 374, 267 N.E.2d 775. We hold that the trial court did not abuse its discretion in reading Brock's testimony upon request from the jury during its deliberations. The ninth assignment of error is not well taken.

Black's tenth assignment of error asserts that the trial court erred in denying his motion for a mistrial. Black moved for a mistrial after the trial court reprimanded counsel for allowing witnesses to leave for the day prior to the conclusion of that day's proceedings. We hold that the trial court did not abuse its discretion in denying Black's motion for a mistrial following its correction of defense counsel with respect to the availability of witnesses for trial. See *State v. Widner* (1981), 68 Ohio St.2d 188, 22 O.O.3d 430, 429 N.E.2d 1065. Therefore, Black's tenth assignment of error is without merit.

In his eleventh assignment of error, Black contends that the trial court improperly overruled his motion for recusal. Black argues that the trial court showed its bias against him throughout the trial. However, alleged errors of law or procedure are legal issues subject to appeal and are not grounds for disqualification. *In re Disqualification of Kilpatrick* (1989), 47 Ohio St.3d 605, 546 N.E.2d 929. Therefore, Black's eleventh assignment of error is not well taken.

The judgment of the trial court is reversed and this cause is remanded for further proceedings in accordance with this decision and the law.

*Judgment reversed*
*and cause remanded.*

KLUSMEIER, P.J., GORMAN and BETTMAN, JJ., concur.