JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Maurice Moss, appeals his jury trial conviction for murder in violation of R.C. 2903.02, a first degree felony. On a Saturday in December of 2001, defendant was visiting his friend of twenty years, Willie Bundy ("friend"). They had been drinking all afternoon at the house of his friend's mother. This friend shared the house with his mother, Mary Jean Anderson ("mother"), his seven-year-old-son, and a boarder ("victim") who rented a room from his mother.
 {¶ 2} In the evening, they joined the mother at a party across the street and continued drinking. When they left the party, they went to a neighborhood bar where they continued to drink. They finally returned the mother to her home and the two men went to a crack house and shared some crack. When they got back to the mother's home, she called out to them that she had fallen on the steps and broken her ankle. After they helped her up the stairs to her bed, defendant confronted the victim, who was then on the way to the bathroom.
 {¶ 3} Defendant, the friend, and the victim somehow all ended up in the bathroom together. Defendant started hitting the victim because the victim did not help the mother get up after she had fallen. The friend joined in this fight and pulled a "small dagger" from his pocket. He stabbed the victim thirteen times. When the victim fell into the bathtub, the friend kicked him and stomped him while defendant had him in a stranglehold.
 {¶ 4} Defendant told the friend to get some garbage bags, saying, "I've done this before." Defendant then told the friend to bring his car around and they loaded the victim into the back seat of the car. They drove to Euclid Beach where they threw the body over a cliff into a ravine because they could not lift it high enough to throw it in the lake. Several days later, a bus driver was standing in the parking lot above the ravine during a layover when he spotted the body and notified his supervisor, who called the police. After the murder was reported in the paper, the friend and his mother junked the car, supposedly because the frame was broken. The friend was arrested a few days later in the presence of defendant. Defendant was instructed to come to the police station the next day, but failed to appear. He was later arrested.
 {¶ 5} The friend gave a signed statement to the police admitting his part in the murder and implicating defendant. The friend later pleaded guilty to murder and, in exchange for the possibility of parole five years early, agreed to testify against defendant. His testimony was inconsistent and also contradicted his statements to the police. The mother also testified, and her testimony contradicted that of the friend in several places. As to the actual fight in the bathroom, however, their testimony agreed.
The jury convicted defendant and he was sentenced to fifteen years to life in prison. He states eight assignments of error on appeal, the first of which states:
I. The Trial Court Erred In Denying Appellant's Motion For Acquittal When The State Failed To Present Sufficient Evidence Of Mr. Moss' Alleged Involvement.
 {¶ 6} Defendant argues that because the friend testified that defendant never used the knife or stomped the victim, the state failed to prove that defendant caused the victim's death and the court should have granted his Crim.R. 29 motion for acquittal.
 {¶ 7} Crim.R. 29 states in pertinent part: "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." In order to avoid an acquittal, therefore, the state is required to provide sufficient evidence, if believed, to convince a reasonable person that defendant is guilty beyond a reasonable doubt. "Pursuant to Crim. R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus.
 {¶ 8} The coroner testified that the cause of death was a combination of several factors: strangulation, multiple stab wounds, blunt impacts to the head and trunk, and skeletal and visceral injuries. The friend testified that defendant had hit the victim a number of times and had choked him. Because one of the causes of death was strangulation and one was blunt trauma, like a punch or a kick, the jury, if it believed the testimony of the friend, could reasonably conclude that the evidence showed beyond a reasonable doubt that defendant murdered the victim. This assignment of error is without merit.
 {¶ 9} For his second assignment of error, defendant states:
II. The Appellant's Conviction For Murder Is Against The Manifest Weight Of The Evidence As The State Failed To Prove Beyond A Reasonable Doubt That The Appellant Aided Or Abetted The Principle.
 {¶ 10} Defendant claims that because the witnesses' testimony was so contradictory, his conviction based on that testimony is against the manifest weight of the evidence. The standard for reviewing the manifest weight of evidence differs from the standard for sufficiency of the evidence and requires the court to review the entire record, weigh the evidence in the record and all reasonable inferences derived from that evidence, including considering the credibility of the witnesses, and then, when looking at the conflicts in the evidence, determine whether the jury clearly lost its way. If the appellate court determines that the jury clearly lost its way and that error resulted in a manifest miscarriage of justice, the court should then reverse the conviction and order a new trial. A new trial should be granted, however, only when the case is exceptional because the evidence weighs heavily against conviction. State v. Martin (1983), 20 Ohio App.3d 172.
 {¶ 11} In the case at bar, although the witnesses' testimony often conflicts, it is consistent in the most important facts. Both the mother and the friend say that defendant was in the bathroom with the friend and the victim. Both agree that a fight ensued. Even defendant in his oral statement to the police admitted that he was present during the fight and helped dispose of the body. He only denied taking part in the fight.
 {¶ 12} Defendant argues that the friend implicated him in the murder so that the friend could make a plea arrangement with the prosecutor to become eligible for parole in fifteen years instead of twenty. The friend implicated defendant, however, on the day the friend was arrested. He testified that he had not decided to plea until shortly before his trial was scheduled. It is unlikely that the friend would have had this motive months earlier when he made his statement to the police implicating defendant.
 {¶ 13} Further, the friend explained several of the inconsistencies in his statements to the police: he was fairly intoxicated on the night of the murder and did not clearly remember some of the events of the evening. He also stated that he lied to the police to protect himself. Although some of the friend's testimony is suspect, the important elements, defendant's presence during the murder and his assistance in disposing of the body, are corroborated by the mother's testimony and defendant's statement to the police. Certainly no one can show all that happened in the bathroom that night. It was not against the manifest weight of the evidence, however, for the jury to conclude that defendant participated in the fight, rather than merely stood in a tiny bathroom just watching.
 {¶ 14} The second assignment of error is overruled.
 {¶ 15} For his third assignment of error, defendant states:
III. The Trial Court Committed Error When It Refused To Give The Jury Instructions Requested By The Defendant.
 {¶ 16} Defendant requested three instructions on aiding and abetting, only one of which, he claims, the court gave. The court's charge stated in pertinent part:
The State alleges that Willie Lee Bandy and Maurice Moss participated in the murder of Emerson Ray. Thus, the State charges that [defendant] was either the principal offender or acted in complicity with Willie Lee Bandy in committing the murder.
Before you can find the defendant guilty on a theory of complicity, you must find that * * * [defendant] purposely aided or abetted Willie Lee Bandy in committing the offense of murder.
To aid means to help, assist or strengthen. To abet means to encourage, counsel, incite, or assist.
It is not a crime in Ohio to fail to come to the aid of another citizen. One may only be responsible for a crime as an aider and abettor if one has the same mental culpability as the accomplice or principal offender.
Mere association with the principal offender or accomplice will not support a conviction on a theory of complicity. Mere presence at the scene of the crime or the fact that a defendant is acquainted with the perpetrator is not sufficient proof, in and of itself, that a defendant is an aider and abettor. An accessory after the fact is not guilty of aiding and abetting in the State of Ohio.
Tr. at 626-627.
 {¶ 17} The trial court, although it used different wording, included the substance of defendant's requested jury instructions. First, defendant requested the following language, "without proof of prior knowledge or conspiracy of a crime," to be added to the actual jury instruction, which states, "[m]ere association with the principal offender or accomplice will not support a conviction on a theory of complicity." The instruction given by the court also states, "[a]n accessory after the fact is not guilty of aiding and abetting * * *." The actual instruction, while not as emphatic, adequately addresses the distinction between "prior" and "after the fact."
 {¶ 18} The second requested language, "[m]ere presence at the scene of a crime or fact that a defendant is [sic] not sufficient proof in and of itself that a defendant is an aider and abettor." We note that the requested language is grammatically deficient; some words necessary to its meaning are missing. The actual instruction provided not only what was requested but also what was missing.
 {¶ 19} Third, defendant objected to the deletion of the following instruction: "[o]ne does not aid and abet if he merely sees a crime being committed." This instruction, however, was substantially included in the following instructions the court gave: "[m]ere presence at the scene of a crime * * * is not sufficient proof"; and
 {¶ 20} "[i]t is not a crime in Ohio to fail to come to the aid of another citizen. One may only be responsible for a crime as an aider and abettor if one has the same mental culpability as the accomplice or principal offender."
 {¶ 21} Defendant has failed to show that the instructions given by the court were contrary to law or prejudicial to the defendant. On the contrary, the substance of defendant's request was fulfilled.
 {¶ 22} The third assignment of error is without merit.
 {¶ 23} Defendant's fourth and fifth assignments of error address a question asked by the jury during deliberations and will be addressed together. They state:
IV. Mr. Moss Was Denied Due Process Of Law When The Trial Court Failed To Present A Jury Question To Counsel And Formulated And Presented A Response To The Jury.
V. The Trial Court Abused Its Discretion When It Failed To Read Portions Of Witness Testimony Repeatedly Requested By The Jury.
 {¶ 24} Defendant states that the "court failed to read one of the questions submitted by the jury into the record. Trial counsel was therefore precluded from voicing an objection to the answers provided by the trial court. Moreover, the trial court's unilateral interaction with the jury constituted reversible ex parte communications."
 {¶ 25} Defendant is correct in stating that the court did not put the referenced exchange on the record. The court had, however, already answered the substance of the question previously on the record and after consulting with the attorneys. The transcript contains the following statement by the court:
Just so the record reflects that I received a note from the jury. It reads as follows, `Your Honor, the members of the jury request a copy of the testimony of the following: Willie Lee Bandy, Mary Anderson,' and it is signed by * * * the foreman.
I sent a response to the jury as follows: `[m]embers of the jury, we cannot provide you with the testimony of any of the witnesses who testified during trial. In actuality, there is no transcript of their testimony. Please rely on your notes and recollection as to the testimony of Willie Lee Bandy and Mary Anderson.' Then I signed it.
I discussed this with counsel prior to sending that response back to the jury and it is my recollection that everybody was agreeing to this response." Tr. at 701. Both attorneys then stated that they had indeed agreed to the court's response.
The objected to exchange consisted of a jury note stating, Your Honor, 1) the Jury would like to know if the Court reporter could read to us part of testimony of Willie Lee Bandy with regards to the Position he was in and [defendant] was in during the struggle in the bathroom.
2) the Jury would like to have read to them what Willie Lee told Willie George [his brother.]
3) What if anything did Detective Beaman say about any marks or bruises on Willie Lee Bandy, and what if anything Detective Beaman said about why he didn't arrest [defendant] at the same time he arrested Willie Lee Bandy.
 {¶ 26} The court's response, which is stapled to the written question but never entered into the record, states:
Members of the jury: the court cannot comply with your requests to have the testimony of Willie Lee Bandy read to you. Firstly, there is no transcript of any testimony as I have previously advised you. Secondly, the entire notes regarding Willie Lee Bandy's testimony: direct examination, cross-examination as well as the re-direct examination would need to be read to you. This testimony was, as you will recall, quite extensive.
With respect to the questions regarding Detective Beaman and Willie Lee Bandy, the court cannot answer these questions for you. Furthermore, the matter of there being no transcript also exists with respect to these witnesses.
I realize that you have been struggling with this case for some days now but I ask that you rely on your notes and recollection. Please continue with your deliberations and attempt to reach a verdict.
(Emphasis in original.)
 {¶ 27} Although this exchange should have been memorialized on the record, State v. Black (1993), 85 Ohio App.3d 771, this court held otherwise in a similar situation in which the court and counsel had already discussed the substance of the question and agreed on the answer. Because the substance of the question and answer had already been discussed, this court explained "appellate counsel in reviewing this issue could not make the argument that there was an improper ex parte communication with the jury, nor could he effectively argue that there was prejudice to [defendant]." State v. Smith, Cuyahoga App. No. 79301, 2002-Ohio-6620, ¶ 13. Here, not only had counsel and the court previously discussed a similar question and answer, defendant has also failed to allege any harm resulting from that omission.
 {¶ 28} Defendant further claims the trial court had a duty to accommodate the jury's request for these portions of the record to be read to the jury. He misconstrues the law, however, on this point. The Ohio Supreme Court has held that "[a]fter jurors retire to deliberate, upon request from the jury, a court in the exercise of sound discretionmay cause to be read all or part of the testimony of any witness * * *."State v. Berry (1971), 25 Ohio St.2d 255, paragraph four of the syllabus, emphasis added. Defendant cites no law stating that reading requested portions of a transcript is mandatory. Nor does he explain why the court may have abused its discretion. These assignments of error are, accordingly, overruled.
 {¶ 29} For his sixth assignment of error, defendant states:
VI. The Trial Court's Instruction For Further Deliberations Resulted In Unfair Coercion On The Minority Juror To Change His/her Position; As Such, The Coercion Rises To The Level Of Plain Error.
 {¶ 30} After significant deliberations, eleven members of the jury sent out a note saying that the jury was deadlocked. The court ordered them to continue deliberating in accordance with the Howard instructions it gave them. Defendant argues that these instructions unduly coerced the hold out juror.
 {¶ 31} The Ohio Supreme Court expressly approved the instructions which the court gave. State v. Howard (1989), 42 Ohio St.3d 18. InHoward, the trial court had given the Allen instruction to the jury. The Supreme Court held that the instruction was unduly coercive because it ordered the minority jurors to reconsider their position but did not give the same instruction to the majority. The Supreme Court explained that the Allen instruction "does not require jurors in the majority to undertake a corresponding reevaluation. The effect of this charge is to place the authority of the trial judge behind the position of the majority. This, potentially, creates a force that few dissenting jurors can resist. It subtly changes the requirement that the jury verdict be unanimous to one more closely resembling majority rule." Id. at 22.
 {¶ 32} The Supreme Court expressly provided an instruction in its syllaus:
In place of the traditional Allen charge, we approve the following supplemental instruction: "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."
Id. at paragraph two of the syllabus.
 {¶ 33} The instruction the trial court gave was nearly identical to this one. The trial court omitted the first sentence addressing the Constitution but gave the rest of the charge practically verbatim, only substituting "other jurors" for "your fellows" and "it is" for "you should consider it" when addressing the desirability of deciding the case. Neither of these substitutions changed the meaning of the charge.
 {¶ 34} Additionally, the trial court added cautionary language at the end of the instruction, stating, "[i]t is conceivable that after a reasonable length of time honest differences of opinion on the evidence may prevent an agreement upon a verdict. When that condition exists, you may consider whether further deliberations will serve a useful purpose. If you decide that you cannot agree and that further deliberations will not serve a useful purpose, you may ask to be returned to the courtroom and report that fact to the Court. If there is a possibility of reaching a verdict, you should continue your deliberations."
 {¶ 35} The Supreme Court emphasized the importance of the instruction not resulting in undue pressure on the minority jurors. This added instruction actually enhances that point by making it clear that the jury might be justified in not reaching a verdict. The trial court did not err in giving the instruction to the jury. This assignment of error is without merit.
 {¶ 36} For his seventh assignment of error, defendant states:
VII. Trial Counsel Provided Ineffective Assistance Of Counsel In Failing To Request A Jury Charge For Involuntary Manslaughter.
 {¶ 37} Defendant argues that because he hit the victim without using a weapon, and because the state failed to prove he intended to kill the victim, the jury should have been instructed on manslaughter, a lesser included offense. His counsel did not request this instruction, so defendant now claims that his counsel was ineffective. In order for his conviction to be reversed for ineffective assistance of counsel, defendant must show not only that his counsel's performance fell below the standard of acceptable performance, but also that but for that deficient performance, the outcome of the trial would have been different. Strickland v. Washington (1984), 466 U.S. 688; State v.Bradley (1989), 42 Ohio St.3d 136.
 {¶ 38} The elements required for conviction of murder are found in R.C. 2903.02, which states in pertinent part: "(A) No person shall purposely cause the death of another * * *." The elements of involuntary manslaughter are found in R.C. 2903.04, which states in pertinent part: "(A) No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). Defendant argues that "the greater weight of the evidence indicates a killing occurr[ed] as a proximate result of a felony, namely an assault." In other words, the death was not purposely caused, he argues.
 {¶ 39} We disagree. The friend testified that defendant choked the victim as well as struck him repeatedly. Additionally, defendant's own statement against interest to the detective belies the claim that he intended merely to assault the victim. He informed the detective that, when he took the victim from the house and put him in the car, the victim was still alive. On the other hand, taking an injured person and throwing him down a ravine in December, where he will have no chance for help and no protection from the elements, and shoving his head in plastic bag, which could cause in suffocation, are not actions describing mere assault, but rather purposeful murder.
 {¶ 40} "Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." State v. Thomas (1988),40 Ohio St.3d 213, paragraph two of the syllabus, citations omitted. Because the evidence at trial would not support a conviction on assault as opposed to murder, counsel did not err in failing to request that instruction.
 {¶ 41} The assistance of trial counsel in the case at bar was not deficient, because counsel did not err in not requesting an instruction on the lesser included offense of involuntary manslaughter. The seventh assignment of error is overruled.
 {¶ 42} For his eighth assignment of error, defendant states:
VIII. The Trial Court Erred By Failing To Comprehensively Instruct The Jury Following Closing Arguments.
 {¶ 43} Defendant argues that the court violated the prescripts of Crim.R. 30(A) because it gave the jury instructions before instead of after the closing arguments. The rule states, in pertinent part: "The court shall * * * give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments." The Ohio Supreme Court has held, "[a]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder. (Crim. R. 30[A], construed.)" State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. Defendant relies, however, on a clause inComen in which the court emphasized that the preliminary jury instructions given before testimony cannot replace full instructions at the end of a case. The Comen Court, however, did not reverse the decision despite a failure of the trial court to repeat all the preliminary instructions at the end of trial. Instead, it noted that despite its holding that complete instructions must be given after closing arguments, "we find appellant presents no evidence that he was prejudiced by the trial court's refusal to repeat all instructions. Additionally, appellant presents no evidence that the absence of instructions on credibility and weighing of the evidence at the completion of counsel's arguments was prejudicial.
 {¶ 44} "Accordingly, while we find that the proper procedure is for a trial court to explicitly follow Crim. R. 30 when instructing a jury, we also find appellant's first proposition of law not well-taken." Id. at 210. See also, State v. Lee (1990), 66 Ohio App.3d 773. Similarly here, defendant does not allege any prejudice arising from the fact that the court gave the bulk of the jury instructions at the close of evidence but before closing arguments. Absent a showing of prejudice, defendant cannot prevail on the assignment of error. The eighth assignment of error, therefore, is overruled.
Affirmed.
MICHAEL J. CORRIGAN, P.J., AND PATRICIA A. BLACKMON, J., CONCUR.