JOURNAL ENTRY AND OPINION *Page 4 
{¶ 1} Defendant Timothy Ferrell appeals from his convictions for rape, gross sexual imposition, felonious sexual penetration and kidnapping. Defendant assigns four errors for our review. For the reasons set forth below, we affirm. On September 6, 2006, defendant was indicted pursuant to a 130-count indictment which accused him of sexual offenses against Jane Doe 1 (d.o.b. May 22, 1985) and Jane Doe 2 (d.o.b. October 6, 1979) in various time periods from 1989 to 2002.[1] Defendant pled not guilty and waived his right to a jury trial. The matter then proceeded to trial on May 18, 2007.
 {¶ 2} Jane Doe 1 testified that defendant is her father. When she was approximately five-years-old, and the family lived on East 53rd Street, defendant would bathe her and *Page 6 
explained the differences in male and female anatomy. In 1991, the family moved to Garfield Heights. In 1997, when the girl was 11, defendant would enter the bathroom when the girl was showering and would wash her hair and body. He would then take her back to his bedroom and put lotion on her body and have her massage him. Jane Doe 1 testified that, in this same time period, he forced her to perform oral sex on him by pulling her hair and forcing her head up and down, and that he also inserted his fingers into her vagina. Jane Doe 1 further testified that defendant used corporal punishment on the children and would strip them down to their underwear and "whip" them if they did something wrong.
 {¶ 3} Jane Doe 1 also testified that, in June 1996, defendant brought her with him to pick her mother up from work and made her perform oral sex upon him while they waited in the car. In October 1997, the family went to the home of relatives to watch the Indians in the World Series. Jane Doe 1 returned home with her father and he made her massage him and perform oral sex on him and also inserted his fingers into her vagina. He ejaculated during this incident. According to Jane Doe 1, similar sexual assaults occurred regularly and defendant also forced her to perform oral sex on him during the day before the wedding of a family friend in 1997. He also touched her breasts at this time.
 {¶ 4} She next established that, in December 2000, she received a pair of neon boxer shorts from a friend. Approximately one week later, defendant performed oral sex on her. At this time, his tongue was pierced. He also had her perform oral sex on him, during which *Page 7 
time he ejaculated. She threw away the shorts immediately after this incident.
 {¶ 5} When she was 15, he attempted to engage in anal sex with her but she told him that it hurt too much and she began crying.
 {¶ 6} Jane Doe 1 next testified that she reported the abuse to her brother and her best friend in April 2003. One week later, she told her mother and the mother put a gun to defendant's head.
 {¶ 7} According to defendant's wife, she did not prosecute defendant because Jane Doe 1 asked her to "do nothing about it." She questioned defendant about the allegations and he reportedly admitted to her that on two separate occasions, in 2001 and 2002, he "stimulated" her vagina but did not insert his finger.
 {¶ 8} In 2006, Jane Doe 1 reported the matter to police. Garfield Heights Police Det. Carl Biegacki investigated the matter and took several statements. He also recorded a conversation between Jane Doe 1 and defendant in which defendant stated that, "sometimes parents and children do wrong things." He also repeatedly denied knowing what Jane Doe 1 was talking about.
 {¶ 9} Jane Doe 2, defendant's niece, testified that in the summer of 1989, when she was ten-years-old, she slept at defendant's home. Defendant woke her up and led her to his bedroom. He then had her on her knees, facing the headboard and he then placed his fingers into her vagina. Jane Doe 2 also testified that when she was eleven or twelve-years-old, she, defendant and another relative were swimming at someone's home, defendant grabbed her *Page 8 
from behind and inserted his fingers into her vagina.
 {¶ 10} Jane Doe 1 and Jane Doe 2 discussed the alleged incidents of abuse at a McDonald's Restaurant in Independence in the 1990s. Prior to her appearance before the grand jury, Jane Doe 2 telephoned defendant to discuss the alleged incidents. According to Jane Doe 2, one of defendant's sisters was present with him and another sister participated via telephone. According to Jane Doe 2, she asked defendant what he had done to her. Defendant reportedly became very emotional, cried, and admitted that he had touched her inappropriately both on the bed and in the pool but stated that he had inserted his finger and not his penis into her. He then stated that he did not want to go to jail and that if she came forward, "it will be two witnesses," and he would lie.
 {¶ 11} On cross-examination she stated that she had also made a sexual abuse complaint against another individual. She denied subsequently withdrawing such complaint. The trial court then noted that the woman did not file a complaint "in the period of time" and determined that further questioning would violate the Rape Shield Law.
 {¶ 12} At the close of the state's case, the defense made a motion for acquittal pursuant to Crim. R. 29. The trial court determined that there was sufficient evidence for 35 of the counts to proceed and reserved ruling on the remaining counts.
 {¶ 13} Defendant elected to present evidence and also testified on his own behalf. Rebecca Vlasak, defendant's niece, testified that she was also in the pool with defendant and Jane Doe 2, during the incident described by Jane Doe 2. Vlasak testified that she did not *Page 9 
observe defendant abuse Jane Doe 2.
 {¶ 14} Defendant's son, Matthew testified that he never observed defendant abuse Jane Doe 1, his sister. He denied that she reported abuse to him. Defendant's sister testified that Jane Doe 2 never reported any abuse to her and, as an adult, also invited defendant to family functions. Defendant's other son also denied that anyone in the family had ever reported abuse to him and also denied observing any untoward conduct involving defendant and Jane Doe 1.
 {¶ 15} Defendant admitted to inappropriately touching Jane Doe 1 on two occasions when she was sixteen-years-old. In the first incident, he stated that he touched her over her bra and underwear. In the second incident, he touched her underneath her bra and underwear but he denied inserting his fingers into her vagina. He then denied touching her inappropriately in the shower, making her clean her room in the nude, denied ever engaging in oral sex with her and all other allegations lodged against him.
 {¶ 16} The trial court subsequently determined that there was sufficient evidence only as to 21 of the counts. The court convicted him of nine counts of rape involving Jane Doe 1, four counts of gross sexual imposition involving Jane Doe 1, two counts of felonious sexual penetration involving Jane Doe 2, and one counts of kidnapping involving Jane Doe 2. He was found not guilty of the remaining counts and was sentenced to 7-25 years of imprisonment for the pre-Senate Bill 2 offenses and a consecutive period of 14 years of imprisonment on the post-Senate Bill 2 offenses, with 5 years of postrelease control. The *Page 10 
trial court also determined that he is a sexually oriented offender.
 {¶ 17} Defendant now appeals and assigns four errors for our review. Defendant's first assignment of error states:
 {¶ 18} "The trial court erred in not allowing defense counsel's inquiry about prior false rape allegations made by one of the alleged victims."
 {¶ 19} Within this assignment of error, defendant complains that the trial court did not permit him to cross-examine Jane Doe 2 about a prior sexual abuse complaint which, he claims, she withdrew or was later "unsubstantiated."
 {¶ 20} In State v. Boggs (1992), 63 Ohio St. 3d 418, 588 N.E.2d 813, the Supreme Court held that false accusations of rape where no sexual activity is involved do not fall within Ohio's rape shield statute. The court then set forth the following procedure for trial courts to follow in such situations:
 {¶ 21} "If defense counsel inquires of an alleged rape victim as to whether she has made any prior false accusations of rape, and the victim answers no, the trial court would have the discretion to determine whether and to what extent defense counsel can proceed with cross-examination. However, if the alleged victim answers in the affirmative, the trial court would have to conduct an in camera hearing to determine whether sexual activity had been involved. If the trial court determined that the accusations were entirely false (that is, that no sexual activity had been involved) the trial court would then be permitted to exercise its discretion in determining whether to permit defense counsel to proceed with *Page 11 
cross-examination of the alleged victim. We therefore hold that where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into on cross-examination pursuant to Evid. R. 608(B)."
 {¶ 22} The court also established a per se rule that prior false allegations of sexual assault "are an entirely collateral matter," and therefore "may not be proved by extrinsic evidence." Id. at 817.
 {¶ 23} In State v. Pickett, Cuyahoga App. No. 88265, 2007-Ohio-3899, this court held that, where the defense fails to meet its burden to demonstrate that "the accusations were totally false and unfounded" as required pursuant to Boggs, the trial court is within its discretion in refusing to permit cross-examination as to such past allegations. Appellant failed to make this demonstration. This court stated:
 {¶ 24} "We reject appellant's argument because it does not offer `proof of fabrication, but merely conjecture based on a wholly different set of circumstances that occurred at an earlier point in time. There could be valid reasons why the victim's mother did not report the sexual abuse to the Jamaican authorities — perhaps the mother did not want to leave the child in another country while waiting for an investigation to conclude, or perhaps the mother did not want to subject the child to a formal investigation; or perhaps the mother did not trust the *Page 12 
Jamaican authorities. Any one of these reasons may have sufficed to explain why she did not report a criminal offense to the Jamaican authorities.
 {¶ 25} "In any event, the family's failure to prosecute the Jamaican relative is not proof that the alleged sexual abuse did not occur. The state pointed out that upon the child's return to the United States, appellant often drove the child to counseling sessions. This suggests that the victim suffered some form of emotional trauma from whatever transpired in Jamaica, thus lending credence to her allegations. Appellant's failure to counter these allegations leads us to conclude that his request for an in camera hearing was at best a fishing expedition. The court did not abuse its discretion in this circumstance by concluding that appellant's claim of fabrication was too speculative to justify an in camera hearing."
 {¶ 26} Similarly, in In re Rine, Licking App. No. 2007 CA 00026,2008-Ohio-170, "the court held that a mere accusation, never proven false, is not sufficiently probative of the credibility of the witness when weighed against the legislative intent of the rape shield law."
 {¶ 27} Accord State v. Miller (Mar. 15, 2000), Summit App. No. 19496 (concluding that defendant had not met his obligation to first "persuade the trial court that the accusations were actually made, that no sexual activity had taken place and that the allegations of rape were false.");State v. Jones, No. 22701, 2006-Ohio-2278 (trial court did not err in refusing to permit cross-examination as to prior allegations where the defendant "failed to offer the trial court any substantial reason to believe the prior allegations were false.") *Page 13 
 {¶ 28} In this matter, the record indicates that the following occurred during the cross-examination of Jane Doe 2:
 {¶ 29} "[BY DEFENSE COUNSEL, MR. PETERSON:] Q. Did you ever make a sexual abuse complaint against someone else that you withdrew?
 {¶ 30} "A. I never withdrew it.
 {¶ 31} "Q. Well, what happened to it? And tell the Court who it was.
 {¶ 32} "[BY PROSECUTING ATTORNEY, MR. CORRIGAN:] Objection.
 {¶ 33} "* * *
 {¶ 34} "THE COURT: Sustained. * * * She did not file a complaint in the period of time.
 {¶ 35} "* * *
 {¶ 36} "MR. PETERSON: * * * The one I was trying to ask her about was abuse made while she was attending the Christian Academy, that you heard testimony about, caused a lot of problems in the family. Of course, it was unsubstantiated. That's what I wanted to bring out."
 {¶ 37} From the foregoing, defendant's trial counsel asked Jane Doe 2 about the allegations that she "withdrew." She denied that she withdrew the allegations. Counsel then informed the trial court that the prior allegations were "unsubstantiated." From the foregoing, it was not determined that Jane Doe 2 made false allegations of rape, it was not determined that the prior claim was entirely false, and Jane Doe 2 did not admit to making a *Page 14 
false rape allegation. The trial court was therefore vested with discretion in determining whether to permit defense counsel to proceed with cross-examination. We find no abuse of that discretion as the record. Accord State v. Graber, Stark App. No. 2002CA00014, 2003-Ohio-137 (Trial court did not err in refusing to permit cross-examination where DHS investigation indicated that allegations were unsubstantiated but did not indicate that they were absolutely false); State v. Black (1993), 85 Ohio App. 3d 771, 778, 621 N.E.2d 484, citing Boggs, supra.
 {¶ 38} Defendant's second and third assignments of error are interrelated and state:
 {¶ 39} "Trial counsel was ineffective when he failed to meaningfully challenge the state's case through the adversarial system.
 {¶ 40} "Trial counsel was ineffective for failing to seek severance of the counts that related to different complaining witnesses."
 {¶ 41} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674. UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. Id. *Page 15 
at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie,81 Ohio St.3d 673, 674, 1998-Ohio-343, 693 N.E.2d 267. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Henderson, Cuyahoga App. No. 88185, 2007-Ohio-2372.
 {¶ 42} As to the claim that defense counsel did not seek to have the counts involving Jane Doe 1 severed from the counts involving Jane Doe 2, we note that Crim. R. 8(A) permits the joinder of separate offenses for trial. A defendant may move to sever the charges under Crim. R. 14. To determine whether an accused was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would have been admissible even if the counts were severed, and (2) if not, whether the evidence of each crime was simple and distinct. State v. Hamblin (1988), 37 Ohio St.3d 153, 158-159,524 N.E.2d 476.
 {¶ 43} In this matter, there is no indication that the trial court, sitting as the fact-finder, was unable to segregate the evidence pertaining to the separate charges. The evidence indicated that the two sets of offenses occurred years apart, had different victims and was simple and distinct evidence. In addition, counsel may have reasonably believed that one trial would be the best strategy to try and persuade the jury to return a verdict of not guilty on all counts of the indictment at the same time. Cf State v. Fulk, Van Wert App. No. 15-07-08, 15-07-09, 2007-Ohio-6975. We cannot conclude that counsel erred in failing to sever the *Page 16 
counts in this matter which was tried to the court.
 {¶ 44} Defendant next contends that his trial counsel did not ask for witness statements prior to or during the cross-examination of witnesses. We note that counsel did ask for the statements and we can discern no prejudice on this record. (Tr. 312, 169-170).
 {¶ 45} Defendant also claims that his trial counsel was ineffective for failing to challenge the competency of Jane Doe 1 and Jane Doe 2. There is absolutely no basis for questioning the competency of either woman pursuant to Evid. R. 601(A).
 {¶ 46} Finally, defendant asserts that his trial counsel did not "meaningfully advocate" on his behalf. Within this contention, he asserts that the aforementioned errors cumulated to render the representation ineffective. In that we have rejected the separate claims, this claim must also fail. State v. Hill, Cuyahoga App. No. 80582, 2002-Ohio-4585.
 {¶ 47} The second and third assignments of error are without merit.
 {¶ 48} Defendant's fourth assignment of error states:
 {¶ 49} "The trial court erred in permitting witnesses to bolster the credibility of the alleged victim."
 {¶ 50} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus;
 {¶ 51} The state may not, in its case in chief, introduce prior consistent statements of a witness in an attempt to bolster that witness's credibility. State v. Wargo (August 9, 1979), *Page 17 
Cuyahoga App. No. 38677.
 {¶ 52} In this matter, however, defense counsel stated that "you [Jane Doe 1] never said anything to anybody" about the abuse (tr. 337), and also asked whether she made the disclosure in response to being forbidden from seeing certain friends. The statements regarding the three disclosures, i.e., to her aunt, her friend, and her boyfriend, were therefore admissible under Evid. R. 801(D)(1)(b), to rebut an express or implied charge that the charge was first made due to an improper motive.
 {¶ 53} This claim therefore lacks merit.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and MARY J. BOYLE, J., CONCUR
[1] Counts 1-28, charged him with rape of Jane Doe 1 during the time period from 1991-1998, when she was under 13, with specifications that he compelled her through force or threat of force. Counts 29-30 charged him with attempted rape of the same individual, during the same time period, i.e., when she was under 13, with force specifications. Counts 31-58 charged him with gross sexual imposition upon Jane Doe 1, during the same time period, i.e., when she was under 13. Counts 59-86 charged him with kidnapping of the same individual in the same time period, i.e., when she was under 13, and contained sexual motivation specifications. Counts 87-89 charged defendant with rape of Jane Doe 1 in November 1997, and alleged that she was under 13. Count 90 charged him with gross sexual imposition of Jane Doe 1 in November 1997, and alleged that she was under 13. Count 91 charged him with kidnapping of Jane Doe 1 in November 1997, and alleged that she was under 13 and also contained a sexual motivation specification.
Counts 92-93 charged him with rape of Jane Doe 1 in the time period of June 1997-September 1997 when she was under 13, with specifications that he compelled her through force or threat of force. Count 94 charged him with kidnapping in this same time period and contained a sexual motivation specification. Counts 95-110 charged him with rape of Jane Doe 1 in the time period from 1998-2002 and contained furthermore specifications that alleged force or threat of force. Counts 111-126 charged defendant with kidnapping the same individual in the same time period and also contained sexual motivation specifications.
Counts 127-128 charged him with felonious sexual penetration of Jane Doe 2, during the time period from June 1989 to September 1989. Counts 129-130 charged him with kidnapping of Jane Doe 2 during this same time period. *Page 1