JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant Cory Pickett appeals from his jury convictions on two counts of rape, two counts of gross sexual imposition and two counts of kidnapping. The allegations arose from two separate incidents. One set of sexually oriented offenses contained specifications that the victim had been under the age of thirteen. In this appeal, appellant argues that (1) the court erred by failing to conduct a rape shield hearing, (2) the court erred by allowing the state to amend the indictment with respect to a material element, (3) counsel rendered ineffective assistance on three different occasions, and (4) the verdict is against the manifest weight of the evidence. We find no error and affirm.
 {¶ 2} The victim was either 12 or 13 years-old at the times when appellant committed the offenses. The state's evidence showed that appellant had been a former boyfriend of the victim's mother and continued to maintain a close relationship with her. Appellant frequently slept over at the mother's house, using an inflatable bed in the living room. The victim testified that she rarely slept in her own bed in favor of the living room couch.
 {¶ 3} The victim testified that around midnight in late February 2004, she had fallen asleep while watching television in the living room. At the time, she wore a nightshirt and underwear. Appellant entered the living room, took the television remote control and either sat on the couch or on the floor in front of the couch. The victim said that she felt appellant touch her leg, but did not open her eyes or *Page 4 
otherwise respond to his touch because she had not fully awakened. Appellant moved his hand to the back of her thigh, but she remained motionless out of fear. Appellant left the room for about five minutes. When he returned, he again started touching the back of her thigh and then moved his hand to her breast. She brushed his hand away, but did not leave or say anything to him. Appellant again touched her breast, and she in turn brushed his hand away. He then tried to take off the victim's underwear. She struggled to prevent him from doing so, but failed. She tried to get up from the couch, but appellant (whom she described as "fat") forced his weight on her and prevented her from leaving. After a two-to-three minute struggle, she felt appellant insert his penis into her vagina. She said that he moved "up and down" on her and that it hurt. He finally exhaled a "deep breath" and got off her. The victim did not know if appellant ejaculated.
 {¶ 4} The victim did not immediately tell anyone what happened because she thought that appellant would not repeat the incident.
 {¶ 5} The second incident occurred around the Memorial Day weekend in 2005. Appellant entered the victim's house between 11 p.m. and midnight. The victim had been sleeping on the couch in an upright position, still dressed. She testified that she did not fully awake. Appellant sat on the other end of the couch for about ten minutes and then unbuttoned her pants. She "jumped" when she heard the zipper of her pants, and started fighting to keep her pants on. The pants came off after a short struggle, and appellant began rubbing the middle of the victim's *Page 5 
thigh. He tried to put his hand under her shirt, but she stopped his hand. During the ensuing struggle, they both wound up on the floor. Appellant stopped and left the room, during which time the victim tried to pull her pants back on. He returned less than a minute later and pulled her pants back off. He then removed her underwear and had intercourse with her.
 {¶ 6} About two weeks after the second incident, the victim and her mother's boyfriend had been driving in his car. The boyfriend noticed that something appeared to be wrong with the victim. He persisted in questioning her until she told him what happened. They went to find appellant but, being unable to locate him, instead went to tell the victim's mother. As they pulled into the driveway, they saw appellant's car. The victim privately informed her mother, who in turn asked appellant if the allegations were true. Appellant denied that he had done anything to the victim.
 {¶ 7} The police were called and the victim was taken for a medical examination. That examination showed no evidence of a sexual assault. A social worker with the Cuyahoga County Department of Children and Family Services testified that he interviewed the victim to make a disposition on the allegations of sexual abuse. Recalling that the victim gave "some of the most vivid detail in a disclosure" that he had ever encountered in a disclosure, he concluded that sexual abuse had been indicated.
 I *Page 6 {¶ 8} Appellant first argues that the court erred when it failed to allow an evidentiary hearing in accordance with Evid.R. 608(B) and R.C.2907.02(E) as to the admissibility of evidence that the victim had made an earlier, unfounded allegation of sexual abuse against an uncle. Prior to the commencement of trial, the defense told the court that it learned that the victim had lived in Jamaica for a period of time with her father's family. Although not explicitly stated in the trial transcript, it appears that the victim told her mother that an uncle had sexually assaulted her during that time. The state told the court that the child had made an allegation of sexual abuse, and that the mother brought the child back to the United States. The state said that the mother did not report the alleged incident to the Jamaican police or any other Jamaican governmental authority. It appears that the victim received counseling as a result of the Jamaica incident. The court refused to allow the defense to inquire about this subject because it believed the inquiry would be speculative.
 {¶ 9} Evid.R. 608(B) permits a very limited introduction of evidence of the character and conduct of a witness:
 {¶ 10} "(B) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for
truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." *Page 7 
 {¶ 11} "The decision to admit evidence of earlier misconduct of a witness for impeachment under Evid.R. 608(B) is `within the sound discretion of the trial court.'" State v. Drummond, 111 Ohio St.3d 14,2006-Ohio-5084, at ¶ 100, quoting State v. Boggs (1992),63 Ohio St.3d 418, 424.
 {¶ 12} In Boggs, the supreme court stated at 421-422:
 {¶ 13} "False accusations, where no sexual activity is involved, do not fall within the rape shield statute.[1] Therefore, a defendant is permitted under Evid.R. 608(B), in the court's discretion, to cross-examine the victim regarding such accusations if `clearly probative of truthfulness or untruthfulness.' However, the defendant will be bound by the answers given by the victim. See, e.g., State v.Gardner [(1979), 59 Ohio St.2d 14] at 19, 13 O.O.3d at 11,391 N.E.2d at 341. Thus, if defense counsel questions an alleged rape victim regarding whether she has made any prior false accusations of rape, and the victim answers no, the trial court *Page 8 
would have the discretion to determine whether and to what extent defense counsel can proceed with cross-examination. However, if the alleged victim answers in the affirmative, the trial court would have to conduct an in camera hearing to determine whether sexual activity had been involved. If the trial court determined that the accusations were entirely false (that is, that no sexual activity had been involved) the trial court would then be permitted to exercise its discretion in determining whether to permit defense counsel to proceed with cross-examination of the alleged victim. We therefore hold that where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into on cross-examination pursuant to Evid.R. 608(B)."
 {¶ 14} As applied to this case, Boggs would have allowed appellant to ask the victim whether she had made any prior false accusations of rape. If the victim were to answer negatively, the court in its discretion could have permitted counsel to cross-examine the rape victim on her denial. If the victim were to answer the question affirmatively, the court would have needed to determine whether any sexual activity that took place would be barred under the Rape Shield Statute. *Page 9 
 {¶ 15} Boggs, however, places the burden on the defense to demonstrate that "the accusations were totally false and unfounded." Id. at 423. Appellant failed to make this demonstration.
 {¶ 16} Defense counsel told the court that the victim had been "sexually abused" by a paternal uncle while staying in Jamaica. Counsel offered no details of the alleged offense and, in fact, told the court that there would be no details unless he were permitted to question the victim. When asked to set forth his proof of fabrication, counsel could only argue that the mother's failure to report the offense to the Jamaican authorities casts doubt on the victim's allegations given her quick response in reporting appellant to the police.
 {¶ 17} We reject appellant's argument because it does not offer "proof of fabrication, but merely conjecture based on a wholly different set of circumstances that occurred at an earlier point in time. There could be valid reasons why the victim's mother did not report the sexual abuse to the Jamaican authorities-perhaps the mother did not want to leave the child in another country while waiting for an investigation to conclude, or perhaps the mother did not want to subject the child to a formal investigation; or perhaps the mother did not trust the Jamaican authorities. Any one of these reasons may have sufficed to explain why she did not report a criminal offense to the Jamaican authorities.
 {¶ 18} In any event, the family's failure to prosecute the Jamaican relative is not proof that the alleged sexual abuse did not occur. The state pointed out that *Page 10 
upon the child's return to the United States, appellant often drove the child to counseling sessions. This suggests that the victim suffered some form of emotional trauma from whatever transpired in Jamaica, thus lending credence to her allegations. Appellant's failure to counter these allegations leads us to conclude that his request for an in camera hearing was at best a fishing expedition. The court did not abuse its discretion in this circumstance by concluding that appellant's claim of fabrication was too speculative to justify an in camera hearing.
 II {¶ 19} Appellant next argues that the court erred by allowing the state to amend counts 1, 2, and 5 of the indictment to change the date on which those offenses allegedly occurred. He maintains that the broad range of possible dates in which the offenses were alleged to have occurred violated his right to due process of the law.
 {¶ 20} Crim.R. 7(D) states in part:
 {¶ 21} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."
 {¶ 22} The precise time and date of an offense are not ordinarily considered to be essential elements of an offense; hence, the failure to provide specific times and dates in the indictment is not, in and of itself, a basis for dismissal of the charges. *Page 11 State v. Sellards (1985), 17 Ohio St.3d 169. In State v. Hemphill, Cuyahoga App. No. 85431, 2005-Ohio-3726, we stated at ¶ 54-55:
 {¶ 23} "With regard to the first claim, we note as an initial matter, that it is well established that, particularly in cases involving sexual misconduct with a child, the precise times and dates of the alleged offense or offenses oftentimes cannot be determined with specificity. See State v. Daniel (1994), 97 Ohio App.3d 548, 556, 647 N.E.2d 174.
 {¶ 24} "Nonetheless, the Sixth Amendment right to be informed of the nature and cause of an accusation requires that a criminal defendant be provided with information concerning all of the elements of the offense charged. In general, an indictment is constitutionally adequate if it `contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.' Hamling v. United States (1974),418 U.S. 87, 117, 41 L. Ed.2d 590, 94 S. Ct. 2887; United States v.Maney (6th Cir. 2000), 226 F.3d 660."
 {¶ 25} We review the court's decision to permit the amendment of an indictment for an abuse of discretion. State v. Beach,148 Ohio App.3d 181, 2002-Ohio-2759, at ¶ 23.
 {¶ 26} The court did not abuse its discretion by permitting the state to amend the indictment, nor has appellant shown any prejudice from the indictment. *Page 12 
 {¶ 27} The indictment originally charged that counts 1, 2, and 5 were committed between February 1, 2004 and May 29, 2005. Prior to jury selection, the state told the court that the dates were erroneously stated by the grand jury, and that the correct dates should have been "February 2004 through December 2004." Appellant did not object to the state's characterization of these dates. In fact, appellant's only objection came when the state sought to amend counts 6, 7, and 10 to reflect that these offenses were committed on May 27, 2005. By failing to object to the amendment of counts 1, 2, and 5, appellant waived any error on appeal.
 III {¶ 28} The third, fourth and fifth assignments of error collectively raise issues regarding counsel's effectiveness. Appellant argues that counsel (a) failed to file a motion for an Evid.R. 608(B) hearing, (b) failed to require the state to produce out-of-court statements of the witnesses, and (c) failed to question certain witnesses about particular topics.
 {¶ 29} In State v. Gondor, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶61-62, the supreme court stated the standard for reviewing claims of ineffective assistance of counsel:
 {¶ 30} "In evaluating claims of ineffective assistance of counsel, a two-step process is used. `First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth *Page 13 
Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial * * *.' Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674;State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.
 {¶ 31} "On the issue of counsel's ineffectiveness, the petitioner has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. [State v. Calhoun (1999), 86 Ohio St.3d 279,1999-Ohio-102] at 289, 714 N.E.2d 905, citing Vaughn v. Maxwell (1965),2 Ohio St. 2d 299, 31 Ohio Op. 2d 567, 209 N.E.2d 164. In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance. State v.Davis, 133 Ohio App.3d 511, at 516, 728 N.E.2d 1111. To demonstrate prejudice, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'Strickland, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674."
 A {¶ 32} Appellant argues that counsel should have renewed an objection to the court's refusal to permit impeachment on the alleged fabrication of the sexual assault in Jamaica. He premises this argument on the victim's negative response to *Page 14 
the question "had anything like this [sexual assault] ever happened to you before?" He now argues that this response contradicted her assertion that she had been sexually assaulted in Jamaica, thus opening the door to impeachment under Evid.R. 608(B).
 {¶ 33} We find that counsel had no duty to renew an objection to the court's refusal to permit impeachment under Evid.R. 608(B) because the victim's testimony, read in proper context, did not contradict any earlier assertion of being raped in Jamaica.
 {¶ 34} After the victim testified to the details leading up to the February 2004 rape, the state asked her why she did not leave the room after appellant made his initial advances towards her. The victim replied that she did not leave the room because "I was scared." The state then asked, "had anything like this ever happened to you before?" The victim replied, "no."
 {¶ 35} Read in context, neither the state's question nor the victim's answer can fairly be read as pertaining to prior allegations of rape. The state merely asked why the victim had not fled when appellant momentarily left the room. We view the victim's answer as underscoring how her inexperience left her confused after a trusted family friend had made unwanted sexual advances on her. Counsel rightfully refrained from using this testimony to bootstrap a rape fabrication argument and thus did not act deficiently.
 B *Page 15 {¶ 36} Appellant next argues that counsel should have asked the court to produce all out-of-court statements provided by the police and social services in an effort to have them reviewed for material inconsistencies.
 {¶ 37} In State v. Johnson, 112 Ohio St.3d 210, 2006-Ohio-6404, at ¶ 142, the supreme court rejected a claim that counsel rendered ineffective assistance of counsel for failing to request permission to review witness statements. The supreme court found that Johnson failed to "show prejudice because he does not explain whether any of the witness statements would have been discoverable or proven useful for impeachment during the trial."
 {¶ 38} During the pretrial proceedings at which the court read into the record the relevant portions of the grand jury testimony, the assistant prosecuting attorney said that "I have read in detail the victim's statement to [defense counsel] as well as the police report * * *." The assistant prosecuting attorney went on to say that "I have not seen the grand jury transcript, but I am fairly certain that what I have provided him is more detailed than what you have in the grand jury transcript * * *."
 {¶ 39} These statements show that counsel did have access to the police statements, as well as the relevant grand jury testimony. Hence, any request to view the witness statements would have been redundant. Because counsel is presumed to act competently, we must conclude that counsel's failure to utilize the statements was because nothing contained in those statements would have been useful to the *Page 16 
defense. It follows that counsel did not have a duty to ask to see statements which had previously been made available to him.
 C {¶ 40} Finally, appellant notes that the medical doctor who examined the victim more than two weeks after the last rape indicated that the victim's hymen appeared to be "WNL," or within normal limits, but with no indication that the hymen remained intact. He maintains that counsel should have asked the doctor about the condition of the victim's hymen because if the hymen were intact, it might have caused the jury to conclude that no sexual activity had occurred.
 {¶ 41} Counsel did not violate an essential duty of representation by failing to question the doctor about the condition of the victim's hymen. There is a notation that the victim's hymen appeared within normal limits. However, even if the hymen had been intact, precedent shows that an intact hymen is not necessarily an indication that intercourse did not occur. See, e.g., State v. Carpenter (1989),60 Ohio App.3d 104, 105; State v. Vang, Summit App. No. 23206, 2007-Ohio-46, at ¶ 12 ("a reasonable juror could find that penetration and an intact hymen are not mutually exclusive"). So even if the doctor had testified that the victim's hymen remained intact, that fact would not necessarily be probative of whether there had been vaginal penetration.
 {¶ 42} Appellant suggests that counsel could have argued that a jury "might not find it difficult to believe that a 14 year-old inner city girl had consensual sexual *Page 17 
relations; and therefore the lack of a hymen could have been easily explained away." Appellant's Brief at 16. This suggestion by appellate counsel is not only in the poorest of taste, but so galvanizing in its stereotyping that its impact with the jury could not reliably be predicted. No attorney would have been required to make such an argument.
 IV {¶ 43} Finally, appellant argues that the jury's decision is against the manifest weight of the evidence primarily because the victim changed the date of the May 2005 offenses after being confronted with appellant's alibi. The indictment originally charged that counts 6, 7 and 10 were committed on May 29, 2005. Appellant offered as proof of an alibi a traffic ticket he received on May 29, 2005, while in Oklahoma City, Oklahoma. In response, the state amended the indictment to reflect the dates of May 27-28, 2005. Appellant maintains that the victim's inability to recall the precise date of the second offense casts so much doubt on her credibility that no reasonable trier of fact could have believed her testimony.
 {¶ 44} When addressing a claim that a judgment of conviction is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Thompkins, *Page 18 78 Ohio St.3d 380, 387, 1997-Ohio-52. We undertake this review being mindful that "[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 45} We cannot conclude that the jury lost its way by finding the victim's testimony credible. The jury knew that the victim had changed the date of the May 2005 offenses after learning that appellant had been in Oklahoma at the time. Her hesitation over the actual date of the offense paled in comparison to the detail she gave when describing how those offenses had been committed. The county social worker told the jury that he recalled the victim giving one of the most detailed accounts of sexual assault that he could remember. This detail undoubtedly made the victim's version of events credible, regardless of her inability to recall precise dates.
 {¶ 46} Appellant's remaining argument calls into question elements of the victim's testimony and the circumstances of the attack. For example, he questions why the victim would have continued to sleep on the living room couch, in close proximity to his air mattress in the same room, even after the February 2004 rape. He claims that it defied belief that the victim would have continued to permit these sleeping arrangements to continue.
 {¶ 47} The jury is in the best position to assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230. The jury may take note of *Page 19 
inconsistencies and need not believe all of a witness' testimony, and may accept only portions of it as true. State v. Antill (1964),176 Ohio St. 61, 67.
 {¶ 48} The victim's failure to report the first rape to her mother is not, in our experience, unusual. The mother had testified that appellant remained her "best friend," so the victim may have been reluctant to tell her mother for fear of being doubted or coming between her mother and her mother's best friend. At any rate, this victim was a child, and appellant's argument assumes that a child would respond under the circumstances just as an adult would. The jury was certainly aware of any inconsistencies in the victim's testimony and her circumstances. Having observed the demeanor of the witnesses, the jury resolved questions of credibility in the state's favor. We have no basis for overturning the jury's decision.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. *Page 20 
CHRISTINE T. McMONAGLE, J., CONCURS.
MARY EILEEN KILBANE, P.J., CONCURS IN JUDGMENT ONLY
[1] R.C. 2907.02(D), the Rape Shield Statute, prohibits the introduction of "[e]vidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity * * * unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value." *Page 1