JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant, Johnny Manning (appellant), appeals his convictions of kidnapping and gross sexual imposition. After reviewing the facts of the case and pertinent law, we affirm.
 I. {¶ 2} The instant case involves sexual abuse of a minor female, S.P., who was born on September 3, 1999, and was six years old at the time of the alleged incident. A brief history of the parties involved follows. In the summer of 2006, S.P. and her three minor siblings were living with their maternal grandmother because their mother, Sashewa Giguere (Sashewa), was in prison for child endangerment. Cuyahoga County Department of Children and Family Services (CCDCFS) has been involved with Sashewa's children since 1999, less than one year after the first child was born. Furthermore, Sashewa was physically abused by her mother, dating back to 1991, and all four of Sashewa's children have been in and out of foster care.
 {¶ 3} On July 1, 2006, the grandmother sent S.P. and one of her brothers to S.P.'s Aunt Kelly's house for the weekend because the children had head lice. Kelly is Sashewa's younger sister, and Kelly's boyfriend was, at the time, appellant. S.P. referred to appellant as "Uncle Chris." One morning during the weekend stay, appellant helped S.P. take a bath by washing her hair and body, including her private parts. He helped S.P. dry off and dress. Appellant then sat on the toilet, asked S.P. to come over and give him a hug, and pulled his pants down. S.P. testified that she gave him a hug and he put his private on her private. S.P. *Page 4 
further testified that she could not move because "it would hurt even more." S.P.'s brother then knocked on the bathroom door, and appellant started brushing S.P.'s hair. Appellant and S.P. went into the living room while S.P.'s brother used the bathroom. Appellant sat down on the couch and told S.P. to sit on his lap. S.P. did as she was told.
 {¶ 4} S.P. did not tell her Aunt Kelly or her grandmother about this incident because she was scared. However, she knew that what appellant did was wrong, and she told her teachers at daycare the following Monday, July 3, 2006. The daycare personnel informed the grandmother of S.P.'s allegations, as well as reported the incident to the authorities. On July 13, 2006, CCDCFS social worker Lawrence Petrus interviewed S.P. Petrus' disposition of the case indicated sex abuse. On July 17, 2006, Dr. David Bar-Shain from MetroHealth Medical Center evaluated S.P. for potential sexual abuse and concluded that the case was "suspicious for abuse."
 {¶ 5} On July 19, 2006, Lakewood Police Detective Richard Busi interviewed appellant, who admitted giving S.P. a bath, but denied any inappropriate touching. On September 27, 2006, appellant was indicted for rape, kidnapping, and gross sexual imposition. On June 6, 2007, a jury found appellant not guilty of rape, but guilty of kidnapping in violation of R.C. 2905.01(A)(2) and/or (A)(4), and guilty of gross sexual imposition in violation of R.C. 2907.05(A)(4). On June 27, 2007, the court sentenced appellant to an aggregate term of eight years in prison.
 II. *Page 5 {¶ 6} In his first assignment of error, appellant argues that "the trial court erred and violated appellant's rights when it permitted the state to offer the testimony of an incompetent witness." Specifically, appellant argues that S.P. was incompetent to testify because she did not appreciate her obligation to tell the truth, nor was she able to accurately receive, recollect, and communicate impressions. We disagree.
 {¶ 7} The standard of review for admissibility of evidence is abuse of discretion. See Peters v. Ohio State Lottery Comm. (1992),63 Ohio St.3d 296, 587 N.E.2d 290. Evid. R. 601(A) states, in pertinent part, that every witness is presumed competent except "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly."
 {¶ 8} In State v. Frazier (1991), 61 Ohio St.3d 247, 250-51, the Ohio Supreme Court held the following regarding the determination of a child witness' competency:
 "It is the duty of the trial judge to conduct a voir dire examination of a child under ten years of age to determine the child's competency to testify. Such determination of competency is within the sound discretion of the trial judge. The trial judge has the opportunity to observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully. Thus, the responsibility of the trial judge is to determine through questioning whether the child of tender years is capable of receiving just impressions of facts and events and to accurately relate them."
 {¶ 9} The Frazier court also held that the trial court must take into consideration five factors when making this analysis, including "(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what *Page 6 
was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful." Id. at 251.
 {¶ 10} In the instant case, the court held a competency hearing before allowing S.P. to testify. In addition, the state began its direct examination of S.P. with what amounted to the equivalent of a second competency hearing. Summaries of S.P.'s testimony follow:
 {¶ 11} S.P., who was seven at the time she testified, knew how to spell her name, she knew her age and birth date, her school, grade and teacher's name, her favorite school subject, her mother and father's names, her siblings' names and ages, where she lived, and her foster parents' names. She was able to define what punishment was, and she explained the difference between a red light and a green light as related to traffic rules. Additionally, she testified as follows about the difference between the truth and telling a lie:
 "THE COURT: And do you know what the truth is? Do you know what it means to tell the truth?
 THE WITNESS: It means you are not lying and you tell the truth that something really happened."
 {¶ 12} In ruling on S.P.'s competency, the court found that "the child did seem to be able to accurately perceive factual experiences. Her recollection with respect to dates and times, even times of year was somewhat sketchy, but that is not, in this court's observation, unusual for children of that age." The court found that S.P. had the ability to recollect past experiences, that her communication skills were excellent, and her intelligence level seemed good. Finally, the court found that the "ability to differentiate between truth and falsity also *Page 7 
appears to be adequate, and appreciation of the ability to testify truthfully does also appear to be adequate in the court's view." The court then found S.P. competent to testify.
 {¶ 13} Appellant, on the other hand, points to minor inconsistencies in the trial testimony to support his argument that S.P. was incompetent to testify. For example, appellant notes that shortly after the alleged incident, S.P. could not recall the clothing she was wearing at the time; however, at trial, she vividly recalled a red outfit. We find that these types of inconsistencies go toward S.P.'s credibility, not competency. See State v. Fullerman, Mahoning App. No. 99CA314, 2001-Ohio-3516 (holding that "[i]nconsistencies in the statements of the child go to the credibility of the child as a witness, not to his competency. Once the competency of a witness has been determined, the credibility of the witness remains a separate question to be determined by the trier of fact.") (Internal citations omitted.)
 {¶ 14} Accordingly, we find that it was well within the court's discretion to rule S.P. competent to testify, and appellant's first assignment of error is overruled.
 III. {¶ 15} In his second assignment of error, appellant argues that "the trial court erred in admitting the testimony of state's witness[es] Lawrence Petrus and Doctor David Bar-Shain." Specifically, appellant argues that social worker Petrus' testimony was "irrelevant, incompetent and highly prejudicial," and that Dr. Bar-Shain's testimony was forensic in nature and, therefore, inadmissible. Appellant does not cite one Ohio case, or any other legal authority for that matter, to support these arguments. We also note that appellant does not *Page 8 
point to any specific statements that may be considered hearsay. Rather, appellant objects to both witnesses' testimony in toto. It is unclear what exactly appellant assigns as the court's error. The social worker and physician's testimony is clearly relevant to allegations of S.P.'s sexual abuse. However, for argument's sake, we examine this assignment of error under a hearsay theory.
 {¶ 16} Pursuant to Evid. R. 803(4), the following testimony is not excluded by the hearsay rule:
 "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 {¶ 17} We first note that statements by physicians, as well as social workers, may fall under the purview of Evid. R. 803(4), as long as they were made for the purpose of medical diagnosis or treatment. See, e.g.,State v. Nasser, Franklin App. No. 02AP-1112, 2003-Ohio-5947, at ¶ 52. Additionally, the Ohio Supreme Court held the following in State v.Dever (1992), 64 Ohio St.3d 401, 413:
 "[S]tatements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis and treatment, are admissible pursuant to Evid. R. 803(4), when such statements are made for the purposes enumerated in that rule. This means that a child's statement identifying his or her abuser should be treated the same as any other statement which is made for the purposes set forth in Evid. R. 803(4)."
 {¶ 18} In the instant case, Petrus interviewed S.P. on July 13, 2006. Appellant argues that this interview served no medical purpose, as a counseling referral had already been given. However, the record shows that Petrus testified about CCDCFS' procedures for *Page 9 
handling sex abuse cases, the disposition of S.P.'s case as "indicated sex abuse," and that the alleged perpetrator was appellant. Furthermore, Petrus testified that his purpose included assessing the case for safety, and making a determination of whether to refer S.P. for medical or psychological treatment. After the interview, Petrus did, in fact, refer S.P.'s case to Dr. Bar-Shain.
 {¶ 19} Dr. Bar-Shain examined S.P. on July 17, 2006, for the purpose of making a determination "where there's an accusation or a suspicion of child sexual or physical abuse." Dr. Bar-Shain's diagnosis in S.P.'s case was "suspicious for abuse." He testified that S.P. gave him an explicit history of sexual abuse and that she had symptoms which may be associated with sexual abuse.
 {¶ 20} We find that Petrus' and Dr. Bar-Shain's testimony is admissible both because it is highly relevant to the case at hand, and it is precisely the type of testimony contemplated by Evid. R. 803(4). Appellant's second assignment of error is without merit.
 IV. {¶ 21} In his third assignment of error, appellant argues that "the trial court erred in denying appellant's motion for acquittal pursuant to Crim. R. 29 where there was insufficient evidence." First, appellant argues that the evidence was insufficient because it came from "an incompetent witness and improper opinion and hearsay testimony." For the reasons in assignments of error one and two, we reject these arguments. Second, appellant argues there was insufficient evidence to convict him of kidnapping. Appellant's reasoning is that the kidnapping was associated with the rape, not the gross sexual imposition, and as appellant *Page 10 
was acquitted of the rape, he should also have been acquitted of the kidnapping. In the alternative, appellant argues that the kidnapping was incidental to the gross sexual imposition. We are unpersuaded by these arguments.
 {¶ 22} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259.
 {¶ 23} Kidnapping, as it relates to victims under the age of 13, is defined in R.C. 2905.01(A)(2) and (4) as follows: "No person * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony * * * [or] [t]o engage in sexual activity * * *." Gross sexual imposition, as it relates to victims under 13 years old, is defined in R.C. 2907.05(A) as "[n]o person shall have sexual contact with another * * * whether or not the offender knows the age of that person." R.C. 2907.01(B) defines "sexual contact," in general, as a touching. Rape, on the other hand, is based on "sexualconduct," which, in general, involves some form of penetration, as opposed to touching.
 {¶ 24} We disagree with appellant that the kidnapping was associated only with the rape. Appellant argues that S.P. "testified that the only time she lacked freedom of movement was during the point of penetration." However, the transcript shows otherwise:
 "Q: And when his private part was touching your private part, could you move? *Page 11 
 A: No. Because if I moved, it would hurt even more."
 {¶ 25} S.P. stated that she could not move, which is sufficient to show kidnapping. This occurred during the touching, which is more akin to gross sexual imposition than it is to rape.
 {¶ 26} We must now determine whether the kidnapping and gross sexual imposition were allied offenses. R.C. 2941.25 prohibits an offender from being convicted of two or more allied offenses of similar import. The two-part test for determining whether crimes are allied offenses is as follows: 1) The elements of the two offenses are compared to see if they correspond to such a degree that the commission of one will result in the commission of the other; if so, the crimes are allied offenses of similar import. 2) The defendant's conduct is reviewed to determine whether the crimes were committed separately or under a separate animus; if so, the defendant may be convicted of both offenses. State v.Blankenship (1988), 38 Ohio St.3d 116.
 {¶ 27} Ohio courts have repeatedly held that gross sexual imposition involving a child under 13 years old and kidnapping are not allied offenses. Kidnapping requires removal or restraint of a person and does not require sexual contact. Gross sexual imposition involving a child victim does not require removal or restraint but does require sexual contact. The commission of gross sexual imposition will not automatically result in kidnapping in the instant case. See State v.Sharp, Cuyahoga App. No. 84346, 2005-Ohio-390; State v. Mader (Aug. 30, 2001), Cuyahoga App. No. 78200; State v. Hay, Union App. No. 14-2000-24, 2000-Ohio-1938; State v. Murphy (July 30, 1998), Cuyahoga App. No. 71775. *Page 12 
 {¶ 28} Appellant's third assignment of error is overruled.
 V. {¶ 29} In his fourth assignment of error, appellant argues that his "convictions for kidnapping and gross sexual imposition were against the manifest weight of the evidence."
 {¶ 30} The proper test for an appellate court reviewing a manifest weight of the evidence claim is as follows:
 "The appellate court sits as the `thirteenth juror' and, reviewing the entire record, weighs all the reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 31} In the instant case, appellant argues that various inconsistencies in S.P.'s testimony render her allegations incredible. For example, appellant argues that S.P. was inconsistent in remembering what clothing she was wearing during the alleged incident, whether appellant helped her dress after the alleged incident, and that S.P. vividly recalled "penetration." We first note that nowhere in the record does S.P. recall "penetration." This could be why the jury acquitted appellant of rape. As to S.P.'s inconsistencies in remembering her clothing, we find this inconsequential to whether a jury could find her testimony about the elements of the offenses credible. A review of S.P.'s testimony reveals that she was credible, intelligent, consistent as to the substance of the offense, and believable. There is no evidence that the jury lost its way, and appellant's fourth assignment of error is overruled. *Page 13 
 VI. {¶ 32} In his fifth and final assignment of error, appellant argues that "the trial court erred in disallowing appellant's counsel the use of exculpatory evidence contained in the purported victim's sealed [CCDCFS's] file." Specifically, appellant's entire argument under this assignment of error is as follows:
 "The court reviewed in camera, the child's CCDHS file concerning prior accusations made by the child. The inspection revealed a prior allegation that did not get prosecuted. This case involved another allegation without physical evidence. The jury was entitled to consider this relevant exculpatory evidence. This court should make an independent review."
 {¶ 33} Appellant cites no legal authority to support his position nor does he cite where in the four-envelope, approximately 1,000-page CCDCFS file, the exculpatory evidence lies.
 {¶ 34} On May 31, 2007, the court issued a journal entry stating that, after conducting a second in camera review of the CCDCFS file concerning S.P. and her three siblings, no "potentially exculpatory information regarding prior allegations of sex abuse by the alleged child victim and/or the alleged victim's brother" exists.
 {¶ 35} Ohio's rape shield law, R.C. 2907.02(D), prohibits, among other things, evidence of any previous allegations of sexual abuse of the victim by persons other than the defendant. See State v. Black,172 Ohio App.3d 716, 2007-Ohio-3133. However, false accusations of alleged abuse, where no sexual activity took place, are not protected by the rape shield, and are admissible under Evid. R. 608(B) at the court's discretion. See State v. Pickett, Cuyahoga App. No. 88265,2007-Ohio-3899. Furthermore, we review the admissibility of evidence under an abuse of discretion standard. *Page 14 
 {¶ 36} In the instant case, the court conducted two in camera inspections and concluded that there was no evidence of false accusations. We conducted an independent review of the children's CCDCFS file, which dates back to 1999, immediately after S.P.'s oldest sibling was born. While the file is quite extensive and, frankly, sad, we saw no evidence of false accusations that may be used as exculpatory evidence in favor of appellant. Thus, the trial court did not abuse its discretion in making this ruling, and appellant's final assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J., CONCURS; COLLEEN CONWAY COONEY, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION *Page 15