[Cite as *State v. Jones*, 2025-Ohio-3095.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230564 |
| | | TRIAL NO. B-9508578 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| ELWOOD JONES, | : | |
| Defendant-Appellee. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 8/29/2025 per order of the court.**

**By:**_____
   **Administrative Judge**

[Cite as *State v. Jones*, 2025-Ohio-3095.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                        :        APPEAL NO.    C-230564
                                              TRIAL NO.     B-9508578

       Plaintiff-Appellant,     :

   vs.                            :

                                            *O P I N I O N*

ELWOOD JONES,                :

       Defendant-Appellee.    :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 29, 2025


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings* and *Seth S. Tieger,* Assistant Prosecuting Attorneys, for Plaintiff-Appellant,

*Vorys, Sater, Seymour, and Pease LLP, David F. Hine* and *Emily E. St. Cyr*, and *Ravert J. Clark*, for Defendant-Appellee.

CROUSE, Judge.

{¶1} In 1996, defendant-appellant Elwood Jones was convicted of aggravated murder and sentenced to death. In 2022, the court of common pleas granted him a new trial.

{¶2} In the intervening years, two crucial things had transpired that form the basis of this appeal: (1) Officer Michael Bray, the State's central witness who testified to discovering the victim's one-of-a-kind pendant in Jones's car, died, and (2) Jones uncovered evidence that he alleges casts doubt on Officer Bray's testimony.

{¶3} The trial court determined that Jones was deprived of an adequate opportunity to cross-examine Officer Bray in his first trial, and that the Confrontation Clause therefore forbade the introduction of Officer Bray's testimony from Jones's first trial at his second. For the reasons set forth below, we affirm the trial court's order.

## I. BACKGROUND

### A. Original Trial & Testimony of Officer Bray

{¶4} Rhoda Nathan was murdered in the Embassy Suites hotel in Blue Ash, Ohio, on September 3, 1994. Roughly a year later, Jones, who worked at the hotel, was accused of her murder. He was charged with two counts of aggravated murder under R.C. 2903.01(B), one count of aggravated burglary under R.C. 2911.11(A)(1), and one count of aggravated robbery under R.C. 2911.91(A)(2).

{¶5} A summary of the evidence at trial can be found in our opinion affirming Jones's original convictions, *State v. Jones*, 1998 Ohio App. LEXIS 3938 (1st Dist. Aug. 28, 1998) (*"Jones I"*), and in the Ohio Supreme Court's opinion affirming that decision, *State v. Jones*, 2000-Ohio-187 (*"Jones II"*). Because of the issues in this appeal, we focus on the testimony of Officer Michael Bray.

{¶6} Officer Bray was employed by the Blue Ash Police Department

("BAPD"). Officer Bray was among the officers investigating Nathan's murder from the very beginning, canvassing Nathan's hotel room for evidence on the day of the murder and returning to the scene on several subsequent days.

{¶7} Officer Bray's most important contribution to the State's case, however, did not concern what he found at the murder scene. It was his discovery of a gold pendant.

{¶8} Officer Bray testified that officers were made aware that Nathan always wore a gold pendant, but that the pendant had not been on Nathan's body when she was found. According to his testimony, Officer Bray had not found such a pendant during his initial search of the room, nor when he went back to the room to search for it. The pendant was missing.

{¶9} Nine days after Nathan's murder, Erlene Metcalff, a coworker at the Embassy Suites with whom Jones occasionally resided, consented to a search of her home by BAPD officers, including Officer Bray. Although Officer Bray did not find Nathan's pendant there, he did see a vehicle that belonged to Jones parked on Metcalff's property. Later that evening, after obtaining a warrant to seize the vehicle, BAPD Officer Joe Boyatt towed the vehicle to the BAPD's garage, where it stayed for about two days. Officer Bray told the 1996 jury that, when he returned to the station in the early hours of the following morning, BAPD Sergeant Robert Lilley handed him the keys to Jones's vehicle, with instructions to "secure those [keys] and allow no one to have any access to the vehicle." Officer Bray testified that he peaked at the vehicle (but did not go in), hid the keys "inside a folder in [his] credenza of [his] desk" and went home.

{¶10} According to Officer Bray, the keys remained in his credenza and nobody else accessed the car the following day, September 14, when Bray accompanied

the vehicle as it was towed to the Hamilton County Coroner's Office for a trace-evidence examination. After putting Jones's car into neutral, Officer Bray testified, he followed the tow truck in his own vehicle. Bray testified that, following his arrival, he observed Joan Dawson-Burke search "the interior compartment concentrating on the front driver and passenger area" for trace forensic evidence, only to come up empty-handed.

{¶11} By all accounts, Officer Bray was alone with the vehicle at the coroner's office at this point—no officers had accompanied him, and Dawson-Burke seems to have left after completing her testing. Bray testified that he had instructions "to thoroughly search the automobile after the serology was done and they had concluded," and that he did just that. Officer Bray searched the exterior, the interior, the glove compartment, and under the hood, all without success. Upon opening the trunk, however, Officer Bray made several discoveries, including a briefcase, which contained a master-key for the Embassy Suites and Jones's nametag, and a bundle of Jones's medical records.

{¶12} And then Officer Bray saw the toolbox. According to his testimony, Officer Bray removed a toolbox from Jones's trunk while still at the coroner's office, placed it on the ground, and opened it. Using a screwdriver he had taken from within the box, Officer Bray began to root around and examine the box's contents. Officer Bray testified that a quick search of the toolbox in this manner revealed, in a corner of the box's upper tray, Nathan's missing gold pendant. Officer Bray immediately recognized the significance of this find, he said, and promptly "bagged it, marked it in [an] envelope and immediately contacted [his] superiors back at the police department to tell them the significance of what [he] had found." Because the gold chain was not with the missing pendant, Officer Bray performed another search of the

vehicle with no success. The chain was never found.

{¶13} Officer Bray testified that BAPD Lieutenant Burdick arrived at the coroner's office to relieve him and oversee the vehicle's return to BAPD's garage. Once Burdick arrived, Officer Bray returned to the station, pendant in tow. At the station, however, he could find no blood or prints on the pendant.

{¶14} Testimony from another officer at Jones's first trial established that, when confronted with the pendant, Jones said, "I've never seen that necklace before in my life." And when the officers told him they had found the pendant in Jones's vehicle, Jones replied, "Not in my fucking car." Jones never waivered on this point.

{¶15} Jones called Jimmy Johnson to testify about how he had worked on Jones's car in Metcalff's driveway on September 4, 1994 (the day after the murder). Johnson described how he had gone through Jones's toolbox and used Jones's tools, but had not seen a gold pendant when he did so.

{¶16} The State's other key witness was Dr. John McDonough, who had performed surgery on a wound on Jones's hand. McDonough testified that Jones's hand injury had been infected, and that one of the organisms he found in testing the wound was eikenella corrodens. *See Jones I*, 1998 Ohio App. LEXIS 3938, at \*5-6; *Jones II*, 2000-Ohio-187, at ¶ 14. McDonough testified that eikenella corrodens was usually found in dental plaque, and that its presence indicated that Jones's hand infection had been caused by a fist-to-mouth injury, sometimes called a "fight bite." *See Jones I* at \*6; *Jones II* at ¶ 14. This story was inconsistent with the narrative in Jones's worker's compensation application. *See Jones I* at \*6.

{¶17} The jury ultimately found Jones guilty on all four counts and found that the aggravating circumstances outweighed mitigating factors to recommend a sentence of death. The trial judge adopted the jury's recommendation and sentenced

Jones to death. That decision was twice affirmed on appeal. *Jones I*; *Jones II*.

### B. Postconviction Litigation

{¶18}   After Jones's convictions were affirmed on appeal, Jones learned that the State had withheld what he described as materially exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). He filed a postconviction petition in the trial court, which was denied. This court affirmed the denial of Jones's first postconviction petition. *See State v. Jones*, 2000 Ohio App. LEXIS 6197 (1st Dist. Dec. 29, 2000) (*"Jones III"*), *appeal not accepted* 91 Ohio St.3d 1510 (2001) (table decision).

{¶19}   Jones then sought a writ of habeas corpus from the federal district court for the Southern District of Ohio, based principally on evidence allegedly withheld by the State in violation of *Brady*. After the petition had been pending for nine years, it was denied by the district court. *Jones v. Bagley*, 2010 U.S. Dist. LEXIS 14893 (S.D. Ohio Feb. 19, 2010) (*"Jones IV"*). The Sixth Circuit affirmed. *Jones v. Bagley*, 696 F.3d 475 (6th Cir. 2012) (*"Jones V"*).

{¶20}   On February 2019, Jones filed a motion for leave to file a delayed motion for a new trial under Crim.R. 33(B), along with a "Proposed Motion for a New Trial." The trial court ordered a hearing "on the merits of [Jones's] motion for new trial," but that hearing would not come until nearly three years later, in August 2022. Following the hearing and post-hearing briefing, the trial court granted Jones's motion for a new trial, based on (1) *additional* alleged *Brady* material Jones had uncovered, and (2) new scientific evidence that undermined Dr. McDonough's "fight bite" evidence.

{¶21}   The State sought to appeal the new-trial order, but this court denied leave, noting that the State had challenged only the *Brady* rationale for the new trial, and not the alternative, new-scientific-evidence rationale. *See* Entry Denying State's

7

Motion for Leave to Appeal, *State v. Jones*, 1st Dist. Hamilton No. C-230005 (Mar. 9, 2023) ("*Jones VI*"), *appeal accepted* 2023-Ohio-4526.[1] Because the State was not granted leave to appeal the new-trial order, the trial court retained jurisdiction. The State did not seek a stay of our mandate or judgment, either from this court or the Ohio Supreme Court.

{¶22} In April 2023, Jones filed a motion to exclude testimony from his 1996 trial at his new one. After a response from the State that addressed only the court's jurisdiction, and after hearings on the issue in June and August, the trial court partially granted Jones's motion and excluded the 1996 testimony of all witnesses from Jones's trial *except* for the testimony of Blue Ash Police Officer Michael Bray. The body of the court's journalized order, which was date-stamped August 25, 2023, read as follows:

> Coming before the Court on Mr. Jones's Motion to Exclude Testimony of Witnesses From Prior Trial, and the State's response to the same, the court being fully advised, the Court does hereby ORDER as follows:
>
> 1. Defendant Elwood H. Jones, Jr.'s Motion to Exclude Testimony of Witnesses from Prior Trial (the "Motion") is GRANTED as to all witnesses other than Blue Ash Police Officer Michael Bray.
>
> 2. As to Officer Bray, the Motion is held in abeyance. The parties shall promptly meet and confer regarding the exclusion of Officer's Bray's testimony and update the Court after they have done so.

---

[1] As of the date of this opinion, the Ohio Supreme Court has not issued a decision on the State's appeal of our denial of its motion for leave to appeal.

**{¶23}** Following this order, the parties met, conferred, and failed to come to an agreement on the admissibility of any of Officer Bray's prior testimony. Jones filed a supplemental brief addressing Officer Bray's testimony, and the State filed a response. Following another hearing, held in October 2023, the trial court concluded that "Mr. Jones did not have an adequate opportunity to cross-examine Officer Bray" regarding various undisclosed material, and that Officer Bray's "testimony must be excluded pursuant to the Confrontation Clause and the . . . Ohio Rules of Evidence." The trial court then memorialized this ruling on its journal in an order dated October 18, 2023, which read, in relevant part, as follows:

> By Order entered August 25, 2023, the Court granted *Defendant's Motion to Exclude Testimony of Witnesses From Prior Trial*, in part, by excluding the prior testimony of all prosecution witnesses *other than* Blue Ash Police Officer Michael Bray. With respect to Officer Bray, the Court ordered the motion held in abeyance pending informal efforts by the parties to resolve the issue.

> The Motion is now before the Court on the portion of the Motion previously held in abeyance. The Court, being fully advised, finds this portion of the motion to be well taken. *Defendant's Motion to Exclude Testimony of Witnesses From Prior Trial*, as it relates to the prior testimony of Blue Ash Police Officer Michael Bray is hereby GRANTED.

### C. This Appeal

**{¶24}** The State filed a notice of appeal on October 25, 2023. That notice stated that the State sought to appeal "from the decision of the trial court on October 18, 2023, and journalized on October 19, 2023, wherein the court granted defendant's motion to exclude the testimony of Blue Ash Police Officer Michael Bray from Jones's

prior trial." Along with its notice of appeal, the State filed with this court a "Certification to Notice of Appeal," as required by Crim.R. 12(K).

**{¶25}** The State asked us to stay briefing, however, when the Supreme Court accepted the State's appeal from our decision denying leave in *Jones VI*. We initially granted the State's motion and stayed briefing on January 10, 2024. However, a month after the Ohio Supreme Court denied Jones's July 2024 request to set a date for oral argument, Jones moved this court to lift its stay. The State did not file a response. On August 9, 2024, we granted the motion to lift the stay and set a briefing schedule. No party has since asked us to stay these proceedings, either by motion or in their briefs.

## II. JURISDICTION & SCOPE OF APPEAL

### A. *Jurisdiction*

**{¶26}** We begin by addressing the trial court's jurisdiction to enter the October 18 order. While this issue was litigated below, neither party raised it on appeal. Nevertheless, the dissent asserts the trial court's orders were void and this court has no authority to consider them. As we explain below, however, both the trial court and this court had jurisdiction.

**{¶27}** It is important to recall that no appeal from the trial court's December 2022 new-trial order was ever pending before this court. The State had no *right* to appeal that order; it had to obtain this court's *leave* to do so. *See* App.R. 5(C). The State's mere "filing of the motion for leave to initiate appeal [does] not affect the trial court's jurisdiction." *Windsor v. Bristow*, 2018-Ohio-1020, ¶ 17 (5th Dist.). Because we denied leave in *Jones VI*, no appeal of the new-trial order was ever pending to divest the trial court of jurisdiction. *Compare State ex rel. Everhart v. McIntosh*, 2007-Ohio-4798, ¶ 13-14 (holding that divestiture rule does not apply when "the appeal is no longer pending" due to a dismissal or was premature or improperly perfected).

10

{¶28} The State's appeal of *Jones VI* to the Ohio Supreme Court likewise had no effect on the trial court's jurisdiction. The only question in that appeal concerns this court's exercise of its discretion to grant or deny leave to appeal. The State's perfected appeal divested this court of jurisdiction to enter inconsistent orders in the appeal numbered C-230005. *See* S.Ct.Prac.R. 7.02(D). It did not, however, bring the merits of the new-trial motion itself to the Ohio Supreme Court.

{¶29} But even if the State *had* perfected an appeal of the new-trial order, the trial court nevertheless "retain[ed] all jurisdiction not inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *State ex rel. Newton v. Court of Claims*, 73 Ohio St.3d 553, 558 (1995); *accord In re S.J.*, 2005-Ohio-3215, ¶ 9. The cases show that an order is inconsistent with a reviewing court's jurisdiction where it resolves the very issue appealed or where, as a practical matter, it would frustrate the reviewing court's ability to rule. *See, e.g., State ex rel. Sullivan v. Ramsey*, 2010-Ohio-252, ¶ 20-24. For example, trial courts are free to execute judgments on appeal (absent a stay or bond), *see State ex rel. Klein v. Chorpening*, 6 Ohio St.3d 3, 4 (1983), but are divested of jurisdiction to grant motions for relief from those judgments under Civ.R. 60(B), *see Howard v. Catholic Social Servs. of Cuyahoga Cty., Inc.*, 70 Ohio St.3d 141, 147 (1994).

{¶30} Put simply: when it comes to trial court jurisdiction, the divestiture rule applies only to orders that would frustrate or nullify the reviewing court's power to affirm, reverse, or modify. Thus, a trial court cannot proceed to a jury trial while review of one of its pretrial orders remains pending. *See Black v. Hicks*, 2018-Ohio-2289, ¶ 40 (8th Dist.). But, in general, when it comes to nondispositive pretrial rulings, the Supreme Court has squarely held that "the pendency of an interlocutory appeal" does *not* "deprive a trial court of jurisdiction to rule on motions pending before it, which

11

motions are not the subject of the appeal." *Yee v. Erie Cty. Sheriff's Dept.*, 51 Ohio St.3d 43, 44 (1990).

{¶31} In this case, the trial court's October 18 evidentiary ruling does not undermine or conflict with the Ohio Supreme Court's jurisdiction to reverse, affirm, or modify our decision in *Jones VI*. The trial court's order that, should a trial occur, Officer Bray's testimony should be excluded under the Confrontation Clause, can have no effect on the Supreme Court's power to rule on our denial of leave. Indeed, even if the merits of the new-trial order were before the Ohio Supreme Court (and they are not), the Court's power to rule would be unhindered by the trial court's provisional pretrial ruling. At worst, the order risked becoming irrelevant, should the Supreme Court reverse *Jones VI* and should this court ultimately reverse the new-trial order. That risk may raise policy concerns about judicial economy, about which reasonable minds can differ. It does not render the trial court's order "inconsistent with the [Ohio Supreme Court's] jurisdiction to reverse, modify, or affirm [this court's] judgment" in *Jones VI*.

{¶32} The trial court's order furnishes the basis for this court's exercise of jurisdiction. The State may appeal from an order excluding or suppressing evidence in a criminal case if that order restricts the State's proof, and the State certifies that the restriction rendered its proof "so weak . . . that any reasonable possibility of effective prosecution has been destroyed." Crim.R. 12(K); *see State v. Davidson*, 17 Ohio St.3d 132 (1985), syllabus; *see also State v. Thyot*, 2018-Ohio-644, ¶ 13 (1st Dist.). The State properly filed such a certification in this case, along with its notice, within the requisite seven days of the October 18 order. *See* App.R. 4(B)(4). We therefore have jurisdiction to review that order. *See id.*; R.C. 2945.67(A).

## B. Scope of Appeal

{¶33} Jones argues that the scope of the State's assignment of error and argument significantly exceed the limits imposed by this court's jurisdiction and the State's notice of appeal.[2]

{¶34} The State's notice of appeal must "designate the judgment, order, or part thereof appealed from." App.R. 3(D); *accord* Loc.R. 3.1(A)(1)(a)(i). In this case, the State's original notice stated that its "appeal is taken . . . from the decision of the trial court on October 18, 2023, and journalized on October 19, 2023, wherein the court granted defendant's motion to exclude the testimony of Blue Ash Police Officer Michael Bray from Jones' prior trial." Its assignment of error, however, seemed to sweep more broadly:

> The trial court abused its discretion by summarily excluding the prior
> testimony of all witnesses (1) before conducting a thorough review of
> each witnesses' statements in light of demonstrable *Brady* violations,
> and (2) without acknowledging or applying evidence rules which
> specifically provide for admission of such prior testimony at a new trial.

(Capitalization normalized.)

{¶35} To the extent one might read this assignment of error as challenging the exclusion of the testimony *other* than Officer Bray's, we would be without jurisdiction. First, this would exceed the scope of the order designated in the notice of appeal. Second, if the State's notice *had* mentioned witnesses other than Officer Bray, it would have been time-barred, as the October 25 notice was filed far more than seven days

---

[2] Jones first raised this issue in a motion to strike the State's brief. We provisionally denied that motion but stated that Jones was free to raise the issue in his response brief for resolution by the merits panel. Jones did so in his responsive merits brief.

after the trial court's August 25 order excluding the non-Bray witnesses. *See* App.R. 4(B)(4).

**{¶36}** The State concedes as much in its reply brief, in which it explains that it "complied with [Crim.R.] 12(K) and invoked this Court's jurisdiction to consider the exclusion of Officer Bray's testimony." Indeed, the State disclaims even the ability to properly certify an appeal with respect to the other testimony, saying that, "[b]y not certifying and perfecting an appeal from the August 24, 2023 order excluding all other witnesses' testimony," it "acknowledged prosecution of Jones could be pursued despite the order." The State therefore assures us that any discussion of the various *other* witnesses in its principal brief (and assignment of error) was nothing more than a "discussion of the context of the exclusion" of Officer Bray's testimony.

**{¶37}** We accept the State's concession and read its principal brief and assignment of error as challenging only the October 18 order excluding the testimony of Officer Bray. So construed, we hold that the State's brief is consonant with its notice of appeal and the matter within our appellate jurisdiction.

### III. EXCLUSION OF OFFICER BRAY'S TESTIMONY

**{¶38}** At the October hearing, the trial court excluded Officer Bray's testimony under both "the Confrontation Clause and the . . . Ohio Rules of Evidence." The State contends this exclusion was error. Because the Confrontation Clause and the Ohio Rules of Evidence provide independent bases for exclusion, we may reverse only if we conclude the trial court erred in its application of *both* the Constitution *and* the rules.

### A. *Confrontation Clause*

**{¶39}** The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., amend. VI. This guarantee was incorporated

against the states by the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 406 (1965). The Ohio Constitution similarly provides that, "[i]n any trial, in any court, the party accused shall be allowed . . . to meet the witnesses face to face." Ohio Const., art. I, § 10. The Ohio Supreme Court has held that this provision "provides no greater right of confrontation" than its federal counterpart. *See State v. Self*, 56 Ohio St.3d 73, 79 (1990).

**{¶40}** We review a trial court's application of the Confrontation Clause de novo. *See State v. Terry*, 2024-Ohio-2876, ¶ 21 (1st Dist.).

1.

**{¶41}** Confrontation Clause jurisprudence has undergone radical transformations over the last half-century. Prior to 2004, *Ohio v. Roberts*, 448 U.S. 56, 66 (1980), provided that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires" the exclusion of their hearsay statement, unless the declarant "is unavailable" and the statement to be admitted "bears adequate 'indicia of reliability.'"

**{¶42}** In *Crawford v. Washington*, 541 U.S. 36 (2004), however, the Court "changed course, to better reflect original understandings," holding that it was "'fundamentally at odds with the right of confrontation' to admit statements based on judicial determinations of reliability." *Smith v. Arizona*, 602 U.S. 779, 784 (2024), quoting *Crawford* at 61. Discarding *Roberts*'s "indicia of reliability" test, the *Crawford* Court limited the Clause's scope to *testimonial* statements, but held that, "[w]here testimonial evidence is at issue . . . , the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford* at 68; *accord Smith* at 783. Under *Crawford* and its progeny, a court must first assess whether an out-of-court statement constituted "'testimonial hearsay,'" i.e., whether

the statement was both admitted for its truth and, in some sense, an equivalent of witness testimony. *Smith* at 784-785, quoting *Davis v. Washington*, 547 U.S. 813, 823 (2006). If so, the declarant must be subject to cross-examination at trial, "unless he [is] unavailable to testify, and the defendant ha[s] had a prior opportunity for cross-examination." *Crawford* at 54.

**{¶43}** In the instant case, no party questions that Officer Bray's prior testimony was testimonial hearsay. Nor do they dispute that Officer Bray's death rendered him "unavailable" for confrontation purposes. *Crawford* therefore holds that Officer Bray's "prior trial . . . testimony is admissible *only if* the defendant had an *adequate opportunity* to cross-examine" him at that prior trial. (Emphasis added.) *See Crawford*, 541 U.S. at 57; *accord Mancusi v. Stubbs*, 408 U.S. 204, 216 (1972); *Mattox v. United States*, 156 U.S. 237, 242-244 (1895).

**{¶44}** To determine when an opportunity to cross-examine is "adequate," we must turn from the *Crawford* line of cases, which concern the admission of hearsay but have rarely addressed this issue, to another line of Confrontation Clause cases concerning limits imposed on cross-examination. These scope-of-confrontation cases have emphasized that, while the "Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion," it does require the defendant be "given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 21-22 (1985) (per curiam). Thus, they have echoed the repeated demand, perpetuated in *Crawford*, that the defendant be accorded "an *adequate opportunity* to cross-examine adverse witnesses." (Emphasis added.) *United States v. Owens*, 484 U.S. 554, 557

16

(1988), citing *Mattox* at 242-243, and *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); *see also Crawford* at 57; *State v. Lang*, 2011-Ohio-4215, ¶ 83-84.

**{¶45}** A defendant is denied that "adequate," "full and fair opportunity" where he is "prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986); *accord State v. McKelton*, 2016-Ohio-5735, ¶ 172; *State v. Gonzales*, 2002-Ohio-4937, ¶ 45 (1st Dist.). Thus, the Court has held that a prohibition on "*all* inquiry into the possibility that [a witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge" violates the Confrontation Clause. (Emphasis in original.) *Van Arsdall* at 679.

**{¶46}** The Court has further clarified that a defendant must not only be allowed to cross-examine a witness by asking "*whether* he was biased," but also to follow relevant categories of impeachment inquiry "to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected." (Emphasis in original.) *Davis v. Alaska*, 415 U.S. 308, 318 (1974). So, in *Davis*, the Court held that the defendant was deprived of his right to confrontation, because, while his counsel was permitted to ask the witness whether he had felt pressured or had any reason to identify the defendant, counsel was prohibited from making any reference to the fact the witness was on probation for a similar juvenile offense at the time. *Id.* at 317-318.

**{¶47}** But the promise of an adequate opportunity is not the promise of cross-examination that is "effective in whatever way, and to whatever extent, the defense might wish." *Fensterer*, 474 U.S. at 20. Where the defendant has not been prevented from engaging in a line of impeachment inquiry, "the extent of cross-examination is within the sound discretion of the trial court." *McKelton* at ¶ 172; *see also Van Arsdall*

at 679; *Gonzalez* at ¶ 45. Thus, courts have held that a trial court does not violate the Confrontation Clause by barring a defendant from iterating on an already-aired line of impeachment. *See, e.g., McKelton* at ¶ 174, 178-180, 186; *Gonzales* at ¶ 46-47.

**{¶48}** The principle underlying these cases is a simple one. If our Constitution indeed "deals with substance, not shadows," *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325 (1867), then its promise of confrontation must protect something more than empty face-to-face encounters; it must ensure an opportunity to pursue legitimate and traditional avenues of impeachment. This rule applies regardless of *why* that cross-examination was inadequate—whether curtailed by a trial-court ruling, as in *Van Arsdall*, *McKelton,* and *Gonzales*; by a state rule of evidence, as in *Davis*; or by a failure to disclose impeachment materials, as Jones argues here. It is the *admission* of the inadequately confronted witness testimony that offends the Constitution.

**{¶49}** We acknowledge that rigorous enforcement of the Confrontation Clause may mean that some evidence can never come in—even evidence that is both crucial to the State's case and intuitively reliable. The State of Washington made this point abundantly clear to the Court in *Crawford*, but the Court flatly rejected any invitation to "replac[e] categorical constitutional guarantees with open-ended balancing tests." *Crawford*, 541 U.S. at 67-68.

**{¶50}** Simply put, under the Confrontation Clause, the "accused" must have been given an adequate opportunity to cross-examine the "witnesses against him," i.e., any individuals whose testimonial statements are to be used to convict him. Opportunity for cross-examination is "adequate" where the defendant is permitted to "engag[e] in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness," *Van Arsdall*, 475 U.S. at 680, and to "make a record from which to argue why [the witness] might have been biased or otherwise

18

lacked that degree of impartiality expected," *Davis*, 415 U.S. at 318. If such an opportunity can be provided, it must be. If such an opportunity cannot be provided, and if it was not provided previously, then the Sixth Amendment bars the introduction of the witness's testimony.

2.

**{¶51}** The State, in its brief, concedes that "Jones identified documents specifically relevant to Police Office[r] Bray's cross-examination," and that "Jones'[s] jury was and is absolutely entitled to know his discovery claim is somewhat contradicted by documents discovered by Jones in habeas proceedings." It argues, however, that the trial court, in excluding Officer Bray's testimony in its entirety, did not adequately sift through to consider which parts might not be subject to exclusion. "If some testimony is ultimately excluded as violative of Jones' right of confrontation," the State urges, it "should be excluded only after a thorough examination and analysis as contemplated by the Evidence Rules. Statement by statement—sentence by sentence." (Underlines sic.)

**{¶52}** The State has cited no rule or case—and we know of none—that requires a trial court to make line-by-line Confrontation Clause findings on the record, or else face reversal. And apart from the absence of such line-by-line findings, the State offers no basis to think that this trial court—which was already deeply familiar with the record, and which conducted two rounds of briefing and hearings on the motion to exclude over a six month period—engaged in anything less than "a thorough examination and analysis" of Officer Bray's testimony.

**{¶53}** Thus, if the State wishes for us to reverse the trial court's order, it must point to *something* in Officer Bray's testimony that the trial court wrongly excluded.

**{¶54}** The State has rested its Confrontation Clause argument, both here and

below, squarely on Evid.R. 806, which allows a trial court to admit evidence to attack the credibility of a hearsay declarant as if that declarant were present to testify. The rule provides:

> (A) When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence that would be admissible for those purposes if declarant had testified as a witness.

> (B) Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.

Evid.R. 806. The State argues that admitting the previously undisclosed documents would provide Jones with an adequate substitute for live cross-examination, while ensuring the State can put Officer Bray's narrative before the jury.

{¶55} That Evid.R. 806 may provide Jones with an opportunity to attack Officer Bray's credibility *today* has no bearing on the adequacy of Jones's opportunity to cross-examine Officer Bray *in 1996*. Evid.R. 806 may permit Jones to put the impeaching documents before the jury, but it cannot possibly give Jones the one thing the Confrontation Clause requires: the opportunity to use those documents to *confront* Officer Bray. At best, admitting the documents under Evid.R. 806 would provide the jury with a "surrogate means of assessing [Bray's] reliability." *See Crawford*, 541 U.S. at 62. But the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61. The State may not "replace[] the constitutionally prescribed method of assessing reliability," i.e., cross-examination,

20

"with a wholly foreign one," e.g., impeachment of an unavailable declarant under Evid.R. 806. *See id.* at 62.

**{¶56}** The State cites our decision in *State v. Black*, 85 Ohio App.3d 771, 774-775 (1st Dist. 1993), in support of its argument that Evid.R. 806 cures any Confrontation Clause infirmities. *Black* concerned the introduction of an alleged victim's prior testimony at a defendant's retrial for sexual misconduct. The alleged victim in *Black* had become unavailable between the defendant's first and second trials, so the trial court had permitted the State to introduce the alleged victim's first-trial testimony at the second. *Id.* On appeal from the second conviction, this court noted evidence that the alleged victim had a "history of reporting incidents of sexual abuse which had been 'unsubstantiated,'" as shown in records that the trial court had withheld from the defendant following an in-camera review. *Id.* at 778. Because the defendant lacked those documents when he cross-examined the alleged victim at his first trial, this court held, he had lacked "an opportunity or a similar motive to develop [the witness's] testimony by cross-examination." *Id.* For this reason, and because "extrinsic evidence of [her] prior false accusations of sexual abuse would not be permitted pursuant to Evid.R. 608(B)," we held that "the trial court erred in admitting [the alleged victim's] prior trial testimony into evidence." *Id.* at 778-779.

**{¶57}** The State argues that *Black* turned on the defendant's inability to prove the witness's extrinsic, "unsubstantiated" allegations by extrinsic evidence. Had the defendant in *Black* been allowed to introduce the declarant-victim's previous allegations, the State suggests, her prior testimony would have been admissible under the Confrontation Clause.

**{¶58}** It is not clear that *Black* supports this proposition. The structure of our holding in *Black* leaves ambiguous whether the inadmissibility of the alleged victim's

prior accusations was a necessary condition of, or an alternative basis for, our ultimate conclusion. Further, our opinion in *Black* is likely better read as a decision under Evid.R. 804 than one under the Confrontation Clause. Although we did consider whether the defendant had an "adequate opportunity to cross-examine [the alleged victim] in the first trial" in the same paragraph we cited three major Confrontation Clause precedents, we pivoted immediately to discussing Evid.R. 804(B)(1) and never looked back. *Black* at 778. The rest of the discussion of that assignment of error, however, focused on adequacy under Evid.R. 804(B)(1) without mentioning the Confrontation Clause again. *Id.* Ultimately, the court sustained the assignment of error *not* because the Confrontation Clause required exclusion, but because the defendant "did not have an opportunity or a similar motive to develop [the] testimony by cross-examination *pursuant to Evid.R. 804(B)(1).*" (Emphasis added.) *Id.*

{¶59} Finally, if, as the State believes, *Black* held that the Confrontation Clause accepts an unavailable witness's inadequately-confronted prior testimony, so long as any impeachment material may be admitted under Evid.R. 806, then *Black* cannot be squared with subsequent Supreme Court precedents. *Black* was decided in a world before *Crawford*, when *Roberts* required only that the court find sufficient "indicia of reliability"—a fact the trial court in *Black* referenced on the record. *See Black*, 85 Ohio App.3d at 779 (1st Dist.). Evid.R. 806 may have provided sufficient indicia of reliability under *Roberts*, but it cannot substitute for an adequate opportunity for cross-examination under *Crawford*.

{¶60} Apart from its reliance on Evid.R. 806, the State's briefs are devoid of any explanation of how the Confrontation Clause might permit the admission of Officer Bray's prior testimony, why Jones's opportunity to cross-examine Officer Bray in 1996 was constitutionally adequate, or which portions of Officer Bray's testimony

could have been admitted under the Confrontation Clause. Such arguments are therefore not properly before us. "We are not obligated to search the record or formulate legal arguments on behalf of the parties, because appellate courts do not sit as self-directed boards of legal inquiry and research, but preside essentially as arbiters of legal questions presented and argued by the parties before them." (Cleaned up.) *State v. Quarterman*, 2014-Ohio-4034, ¶ 19.

**{¶61}** Indeed, the State has forfeited any such argument twice over. The State chose, repeatedly and in spite of ample opportunity at the trial-court level, not to argue that *any* portions of Officer Bray's testimony were subject to adequate cross-examination in 1996, or that *any* of the previously withheld documents cited by Jones were unnecessary for an adequate opportunity to cross-examine Officer Bray. Just as in this court, its only Confrontation Clause argument in the trial court rested on Evid.R. 806. *Compare State v. Belville*, 2022-Ohio-3879, ¶ 17, fn. 1 (deeming argument raised in proposition of law "forfeited" because appellant had "at no point in the proceedings below or in his briefing . . . developed an argument under the applicable standard").

**{¶62}** In his initial motion to exclude, Jones argued that the undisclosed impeachment materials infected all of the testimony from the 1996 trial, including Officer Bray's. In its brief in opposition, the State ignored Jones's substantive arguments entirely, choosing instead to argue that the trial court lacked jurisdiction to rule. At the August hearing on the motion, when the State argued that it "d[id]n't see how" any "allegedly newly discovered evidence ha[d] any impact on his cross-examination that he was at a secure location and found the pendant in the toolbox," Jones countered by offering specific examples of relevant documents. The State said it would need to review those documents.

**{¶63}** Jones gave the State just what it asked for when he filed his supplemental brief, which he dedicated entirely to the issues with Officer Bray's testimony. As the State acknowledges, Jones's supplemental brief "identified documents specifically relevant to Police Office Bray's cross-examination," and provided record citations, explanations, and attached exemplars. At that point, the State had its chance to argue that the cited documents *didn't* deprive Jones of an adequate opportunity to cross-examine Officer Bray in 1996 or *didn't* undercut particular portions of Officer Bray's testimony. It chose to do neither. Nor did it suggest that Jones's request for a general exclusion of Officer Bray's testimony was too broad. Both in its brief and at the hearing the State argued that (1) "PO Bray's prior testimony is admissible under Evid.R. 804 (A)(4) and (B)(1)" (which we address below) and (2) "Evid.R. 806 provided an adequate substitute" for live cross-examination (which we addressed above).

**{¶64}** The State's only Confrontation Clause argument thus rested on Evid.R. 806, which, as we have explained above, has no bearing on the admissibility of Officer Bray's prior testimony under the Confrontation Clause. The State has never argued that Jones's opportunity to cross-examine Officer Bray in 1996 was otherwise adequate or that any parts of Officer Bray's testimony are admissible under the Confrontation Clause. Accordingly, we affirm the trial court's order excluding Officer Bray's testimony under the Sixth Amendment.

3.

**{¶65}** Further, an independent survey of the record supports the trial court's Confrontation Clause holding. As previously discussed, Jones, in his briefing below,[3]

---

[3] Because the State, as appellant, elected to cabin its arguments on appeal to Evid.R. 806, Jones, as

pointed the trial court to numerous undisclosed documents and explained how they would have been used to impeach Officer Bray's testimony. A thorough review of these materials, in concert with the original trial record, suggests that Jones was deprived of an adequate opportunity to cross-examine Officer Bray in 1996.

{¶66} The undisclosed documents include a treasure-trove of impeachment materials for a defendant who had claimed, from the day of his arrest, that he had no idea how the pendant could have gotten into his vehicle. During the 1996 trial, Jones's counsel attempted to parse every detail of Officer Bray's interaction with the vehicle and search of the toolbox while Officer Bray was on the stand and during closing arguments—down to where the toolbox was positioned when Bray opened it and the arrangement of items on the ground. But defense counsel in 1996 lacked the tools to impugn Officer Bray's testimony. The State itself, in its rebuttal closing argument, drove home the utter lack of evidence impeaching Officer Bray's pendant narrative, telling the jury, "What about the pendant? What was said to you about the pendant? Nothing. You know why? Because they can't explain the pendant. They can't explain it at all."

{¶67} Under the Confrontation Clause, the court below was required to ask whether Jones was entirely deprived of the opportunity to pursue some distinct and traditional line of legitimate impeachment in examining Officer Bray at his prior trial. He was. Because Jones lacked access to the undisclosed documents from the coroner's office and police department, he was effectively prevented from mounting *any* serious attack upon Officer Bray's presentation of the events of September 14, 1994, at the Hamilton County Coroner's Office.

---

appellee, properly addressed his brief to that point, rather than battle strawmen the State failed to raise. Thus, we refer here to the arguments made in the supplemental briefs and hearings below.

**{¶68}** Jones was able to ask Officer Bray *whether* he was misremembering or lying about how he found the pendant, but, because the State withheld evidence, he was prohibited from "mak[ing] a record from which to argue *why*" Officer Bray should have been viewed as an unreliable narrator of that day's events. (Emphasis sic.) *See Davis*, 415 U.S. at 318. The inability to pursue these lines of inquiry was certainly more than a limitation on iterative or duplicative testimony. *Compare*, *e.g.*, *McKelton*, 2016-Ohio-5735, at ¶ 174, 178-180; *Gonzales*, 2002-Ohio-4937, at ¶ 46-47 (1st Dist.). It denied Jones an opportunity to adequately cross-examine Officer Bray in a manner that could satisfy the Confrontation Clause. *Compare Davis* at 318.

**{¶69}** We do not know whether these lines of inquiry would have been fruitful. But that uncertainty cannot be a basis for denying confrontation today; it is *the very reason* the cross-examination of Officer Bray in 1996 is inadequate. Now that Officer Bray has passed away, Jones will never get that chance to try. Because such testing in the crucible of cross-examination is the only "indicium of reliability sufficient to satisfy constitutional demands," *Crawford*, 541 U.S. at 69, we hold that the trial court did not err in excluding Officer Bray's 1996 testimony under the Confrontation Clause.

### B. Evid.R. 804(B)(1)

**{¶70}** The State also argues that Officer Bray's testimony was admissible because it fit within the prior-testimony exception to the rule against hearsay in Evid.R. 804(B)(1). We need not reach that question, because the Ohio Rules of Evidence cannot admit evidence that the Confrontation Clause renders inadmissible. *See Smith*, 602 U.S. at 794 ("[F]ederal constitutional rights are not typically defined—expanded or contracted—by reference to non-constitutional bodies of law like evidence rules."). We therefore express no opinion on whether Evid.R. 804(B)(1), which also applies in civil proceedings and to evidence sought to be admitted against

26

the prosecution, incorporates an adequate-opportunity requirement like that under the Confrontation Clause. Nor do we address whether Evid.R. 806 might cure a lack of adequate opportunity under such a construction of Evid.R. 804(B)(1). Because the State has not shown the trial court erred in excluding Officer Bray's testimony under the Confrontation Clause, we overrule the State's sole assignment of error on that basis alone and leave considerations of Evid.R. 804(B)(1) for another day.

## IV. CONCLUSION

{¶71} For the foregoing reasons, we overrule the State's sole assignment of error and affirm the trial court's October 18, 2023 "Order Granting Portion of Defendant's Motion to Exclude Testimony of Witnesses from Prior Trial Previously Held in Abeyance."

Judgment affirmed.

**NESTOR, J.,** concurs.
**ZAYAS, P.J.,** dissents.

**ZAYAS, P.J.,** dissenting.

{¶72} I respectfully dissent because the trial court lost jurisdiction to enter the order at issue once the State perfected its appeal to the Ohio Supreme Court of this court's order denying the State leave to appeal.

{¶73} Under R.C. 2505.04, "[a]n appeal is perfected upon the filing of a written notice of appeal. . . . If a leave to appeal from a court first must be obtained, a notice of appeal also shall be filed in the appellate court." "[O]nce an appeal is perfected, the trial court is divested of jurisdiction over matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment." *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common*

*Pleas*, 2011-Ohio-626, ¶ 13, quoting *State ex rel. Rock v. School Emp. Retirement Bd.*, 2002-Ohio-3957, ¶ 8.

**{¶74}** Upon the filing of a notice of appeal, "the trial court loses jurisdiction except to take action in aid of the appeal." *State v. Washington*, 2013-Ohio-4982, ¶ 8; *In re S.J.*, 2005-Ohio-3215, ¶ 9; *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97 (1978). The trial court retains jurisdiction over issues not inconsistent with that of the appellate court to review, affirm, modify or reverse the appealed judgment, such as the collateral issues like contempt, appointment of a receiver and injunction. *State ex rel. Special Prosecutors* at 97.

**{¶75}** Relying on *Windsor v. Bristow*, 2018-Ohio-1020 (5th Dist.), Jones contends the trial court was not divested of jurisdiction when the State sought leave to appeal from this court's judgment. Jones's reliance on *Windsor* is misplaced. *Windsor* addressed the filing of a motion for leave to appeal under R.C. 2323.52, the vexatious-litigator statute. *Id.* at ¶ 10. The question before the court was whether the trial court retained jurisdiction to enter an amended order after the appellant filed a motion for leave under R.C. 2323.52. *Id.* at ¶ 7-10, 17. The *Windsor* court explained that the vexatious-litigator statute "toll[s] the time within which a notice of appeal must be filed, but it has no impact on the trial court's authority." *Id.* at 17; R.C. 2323.52(F)(2).

**{¶76}** Notably, under R.C. 2323.52, a vexatious litigator cannot initiate legal proceedings in a court of appeals "without first obtaining leave of the court of appeals to proceed pursuant to division (F)(2)" of the statute. In other words, a vexatious litigator cannot file a notice of appeal until leave is actually obtained from the court of appeals. No similar circumstances are present here.

**{¶77}** Here, the State complied with the requirements of App.R. 5(C) and filed

28

the notice of appeal simultaneously with its motion for leave to appeal. As previously discussed, an appeal is perfected when the notice of appeal is filed. R.C. 2505.04. Therefore, jurisdiction was established in this court upon the State's filing of its notice of appeal.

**{¶78}** Further, after this court denied the State's motion for leave, the State perfected its appeal with the Ohio Supreme Court on June 15, 2023 when the notice of appeal was filed with a memorandum in support of jurisdiction. *See* S.Ct.Prac.R. 7.01(A)(1)(a)(i) and (ii).

**{¶79}** The order at issue in the appeal now before this court was entered on October 19, 2023. The State's appeal of the denial of the motion for leave and the order granting a new trial was perfected in the Ohio Supreme Court on June 15, 2023, divesting the trial court of jurisdiction to proceed. *See Black v. Hicks*, 2018-Ohio-2289, ¶ 22 (8th Dist.) (The trial court lacked jurisdiction to commence the jury trial once Hicks challenged the appellate court's dismissal of his appeal of the trial court's evidentiary orders for the lack of a final appealable order by filing a notice of appeal and a motion in support of jurisdiction in the Ohio Supreme Court).

**{¶80}** *Black v. Hicks* is instructive. In *Black*, Hicks filed a notice of appeal on May 10, 2016, challenging the trial court's orders "granting Black's motions in limine, to have matters admitted, and to preclude appellants from offering evidence that was not produced during discovery." *Id.* at ¶ 37. On May 24, 2016, the appellate court dismissed the appeal for lack of a final appealable order. *Id.* at ¶ 11. "On May 25, 2016, [Hicks] filed a notice of appeal and a memorandum in support of jurisdiction in the Ohio Supreme Court challenging [the] court's dismissal [of the appeal]." *Id.* at 12.

**{¶81}** "Despite the appeal pending in the Ohio Supreme Court, a jury trial commenced on May 25, 2016." *Id.* at ¶ 13. "The jury returned a verdict in favor of

Black, which the trial court journalized on June 3, 2016." *Id.* at ¶ 14. Hicks appealed the trial court's judgment. *Id.* at ¶ 15-17.

**{¶82}** On appeal, Hicks argued that the trial court was without jurisdiction to commence a jury trial on May 25, 2016. *Black*, 2018-Ohio-2289, at ¶ 19 (8th Dist.). Black argued that Hicks's appeal to the Ohio Supreme Court did not divest the trial court of jurisdiction because Hicks did not seek an immediate stay in the Ohio Supreme Court, and the Ohio Supreme Court declined to accept jurisdiction on September 14, 2016. *Id.* at ¶ 12, 19.

**{¶83}** The Eighth District first held that Hicks was not required to seek an immediate stay because "[Hicks] perfected the jurisdictional appeal to the Ohio Supreme Court on May 25, 2016," and by filing "an accompanying memorandum in support of jurisdiction with the notice of appeal, appellants were not required to file a motion for a stay of this court's judgment pursuant to S.Ct.Prac.R. 7.01(A)(3)(a)." *Id.* at ¶ 22.

**{¶84}** The court further held that "the filing of the notice of appeal with the Ohio Supreme Court divested the trial court of jurisdiction to proceed on the merits of Black's claims." *Id.* at ¶ 40. The appeal in the Ohio Supreme Court had already been filed, and was still pending before the trial commenced. *Id.* "The trial court's commencement of the jury trial was inconsistent with the Ohio Supreme Court's jurisdiction to reverse, modify, or affirm [the appellate court's] May 24, 2016 dismissal of [the appeal] for lack of a final appealable order that appellants appealed." *Id.* at ¶ 40.

**{¶85}** Similarly, here, once the State filed its appeal in the Ohio Supreme Court, the trial court lost jurisdiction except to take action in aid of the appeal. *Id.*; *State v. Riley*, 2024-Ohio-5712, ¶ 24, (Dewine, J concurring in judgment only). The

30

State appealed the trial court's order granting Jones a new trial, and the trial court's evidentiary rulings did not aid the appeal as they "[did] not address 'collateral issues like contempt, appointment of a receiver and injunction.'" *See Riley* at ¶ 24, quoting *State ex rel. Dobson v. Handwork*, 2020-Ohio-1069, ¶ 17, quoting *State ex rel. Special Prosecutors*, 55 Ohio St.2d at 97.

**{¶86}** "Where a trial court enters an order without jurisdiction, its order is void and a nullity." *State v. McDonald*, 2023-Ohio-464, ¶ 16 (8th Dist.), citing *State v. Williamson*, 2014-Ohio-3909, ¶ 18 (8th Dist.), citing *State v. Abboud*, 2006-Ohio-6587, ¶ 13 (8th Dist.). Because the trial court's orders were void, this court has no authority to consider them. *See Riley* at ¶ 24.